**UNITED STATES of America**

v.

**Gerald W. CLEMENTE, John A. DeLiere, Nicholas Salerno.**

**Cr. No. 86–240–Y.**

United States District Court, D. Massachusetts.

Jan. 17, 1990.

Robert S. Mueller and A. John Pappalardo, for U.S.

Richard Bachman, Hale, Sanderson, Byrnes & Morton, Boston, Mass., for Gerald W. Clemente.

Richard M. Egbert, Rochman, Platzer, Fallick & Rosmarin, Boston, Mass., and Barry M. Fallick, Rochman, Platzer, Fallick & Rosmarin, New York City, for John A. DeLiere.

George F. Gormley and Robert L. Goodale, Boston, Mass., for Nicholas Salerno.

## MEMORANDUM AND ORDER ON THE DEFENDANTS' MOTIONS FOR REDUCTION OF SENTENCE

YOUNG, District Judge.

I. *Gerald W. Clemente*

Gerald W. Clemente ("Clemente") comes before the Court seeking, pursuant to Fed. R.Crim.P. 35(b), a reduction in the sentence of 15 years imposed on him for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. sec. 1962(c) (1982), which sentence he is to serve consecutive to a 30 to 40 year sentence imposed on him for larceny by Mr. Justice Robert Barton of the Massachusetts Superior Court. *See Commonwealth v. Clemente*, Nos. 85–3632–35, 85–3637, 85–3637–38 (Mass.Super.Ct. for Middlesex County, July, 1987), *aff'd*, 25 Mass.App.Ct. 229, 517 N.E.2d 479 (1988), *rev. denied*, 401 Mass. 1104, 519 N.E.2d 1348 (1988).

Mr. Clemente comes before the Court as the admitted mastermind of a long-standing scheme to steal advance copies of police promotional examinations and sell them to police officers whose greed and ambition for promotion overcame their duty and oath of office. *See United States v. Doherty*, 867 F.2d 47 (1st Cir.1989).

While serving as a Captain in the Metropolitan District Commission Police, Clemente not only was active in corrupting fellow officers for his own financial gain but also participated in a multi-million dollar theft from the Depositors Trust Company in Malden. His pattern of abysmal corrup-

tion was exposed when his chief confederate in the police examination scam attempted to murder a co-conspirator in the bank larceny. When he was convicted of the theft from the Depositors Trust Company and faced a significant state sentence thereon, Clemente cut a deal with federal prosecutors in which they promised to recommend a federal sentence concurrent with his state incarceration in return for his cooperation and truthful testimony concerning the police examination scam.

Both parties appear to have fully performed pursuant to the resulting plea bargain. Clemente has cooperated fully and his testimony has resulted in the conviction of six senior police officers and one Massachusetts legislative aide. For its part, the government has recommended and has vigorously espoused a concurrent sentence. After careful consideration, however, this Court saw fit to impose a sentence of 15 years consecutive to the state sentence. The Court explained its reasons for the sentence on the record at the time it was imposed.

No judge can arrive at a criminal sentence lightly or without a great deal of introspective reflection. With respect to the sentence imposed on Mr. Clemente, I believe now what I wrote in the context of another sentencing during my service as an associate justice of the Massachusetts Superior Court:

> There is no more responsible yet lonely aspect of judicial office than the imposition of a criminal sentence upon fellow human beings. There is no background experience, no specialized training, no academic treatise that especially befits one human being to sentence another. Yet, in a just society, the fair and impartial administration of the laws is the quintessential element that crystallizes our heterogenous, individualized, liberty loving humanity into the genuine commonwealth that we have here in Massachusetts. Thus it falls to this court, after full and proper trial, to impose a just sentence. The power so to sentence is conferred by our democratically elected legislature which sets absolutely the limits of judicial discretion in this area....

> Still, the discretion conferred is broad ... and a decent regard both for the sensibilities of the defendants and the community as a whole, requires that some explanation be given.

> In my view every criminal sentence ought be a reflection of the most solemn judgment of the community as a whole. Tailored to the facts of the specific offense a criminal sentence ought express the coolly dispassionate views of our people, sensitive to their finest, most humane qualities, eschewing all vengeful, retributive elements, yet firmly expressing the moral indignation that is warranted by the criminal misconduct. It is for the judge to give expression to this generalized sentiment in the particular sentence meted out.

*Commonwealth v. Cordeiro*, Nos. 12265, 12268, 12270 (Mass.Super.Ct. for Bristol County, April 23, 1984), *aff'd*, 401 Mass. 843, 519 N.E.2d 1328 (1988).

Litigants and the public have the right to expect that the Court will approach the matter of criminal sentencing with extreme care and deliberation. Sentences so imposed ought not lightly be disturbed lest public confidence in the careful weighing of the factors that determine a criminal sentence be undermined. For these reasons, this Court attempts to approach the imposition of any criminal sentence with the utmost sensitivity. Having done so, this Court follows a practice of re-hearing and reconsidering criminal sentences only for the most compelling reasons.

In this case, a hearing on the motion to reduce Clemente's sentence was scheduled due to the insistence of the government. At the hearing, however, the government did naught but argue again that this Court ought revise its sentence in the manner the government had originally requested, *i.e.*, to run concurrently with the sentence imposed upon Clemente in the Superior Court of Massachusetts. The practical effect of such a revision, of course, would result in no more time being served for masterminding the police examination scam than Clemente is already serving on

his state sentence for larceny. Under his state sentence, Clemente is eligible for parole after serving one-third of his minimum term of confinement. He presently has a state parole eligibility date of December 7, 1995. Under the law in effect at the time this Court imposed its federal sentence on Clemente, he will become eligible for parole after serving one-third of his federal sentence, in this case five years. Even a twenty year concurrent federal sentence (it will be remembered that this Court imposed a 15 year sentence upon Mr. Clemente) would place his federal release date sometime before December 7, 1995, resulting in no time whatsoever being served for the extraordinarily serious racketeering offense of which he has been convicted. The government recognizes this, of course, but having made their deal with Clemente they vigorously urge this result once again upon the Court. The arguments present nothing new and, were this the only issue before the Court, the motion ought be denied out of hand.

The matter does not end there, however. Counsel for Clemente argued at the hearing that the imposition of a consecutive federal sentence after the heavy state sentence had the practical effect of requiring Clemente to serve his entire 30 years in state custody before being released to commence his consecutive federal sentence. Manifestly, such a lengthy overall period of imprisonment went beyond the intention of this Court in imposing a just federal sentence. Accordingly, the Court took the matter under advisement to investigate.[1]

A careful review of Massachusetts penal practices reveals Clemente's argument to be utterly without substance. While it is true that, in view of the pending federal period of incarceration, Clemente will be ineligible for various types of furlough and work release programs designed to reintegrate a state prisoner into society, the overall length of his state sentence ought not be affected in any manner by the consecutive federal sentence. Even if it were, this is a matter for consideration by the Massachusetts Superior Court in the first instance. Here, Mr. Justice Barton of that court entertained a motion to revise and revoke Clemente's state sentence pursuant to Rule 29(a) of the Massachusetts Rules of Criminal Procedure. At that hearing, counsel apraised Mr. Justice Barton of the imposition of the consecutive federal sentence by this Court. At the hearing's end, Mr. Justice Barton denied Clemente's state motion to revise and revoke. There thus appears no compelling reason to revise the federal sentence imposed with such care upon Mr. Clemente at the time of his conviction.

 Still, given the passage of time and the development of legal standards for sentencing under the Sentencing Reform Act of 1984, Pub.L. No. 98–473, sec. 211, 1984 U.S.Code Cong. & Admin. News (98 Stat.) 1987 (codified in 18 U.S.C. sec. 3551 note), this Court—even though it is not in any way required to do so—has considered the probable sentence which Mr. Clemente would have received had he been sentenced under the sentencing guidelines.

Had Mr. Clemente come on for sentencing under the present sentencing guidelines, the guideline range would have called for a sentence of between 57 to 71 months with five strong reasons to depart upward from that range and one strong reason to depart downward.[2] All things considered,

---

1. Unfortunately, the Court is not, in these circumstances, well served by the adversary process since both the government and Clemente are seeking the same goal—reduction of his federal sentence so that it will impose no more time served than he will have to do on account of his state conviction.

2. The grounds for upward revision are found in United States Sentencing Commission, *Guidelines Manual*, sec. 2F1.1 (April 1987)—the dollar loss due to the offense does not fully reflect the loss of confidence in important law enforce-

ment institutions caused by Clemente's pervasive corruption; U.S.S.G. sec. 4A1.3—the Criminal History Category does not adequately reflect the seriousness of past conduct; U.S.S.G. sec. 5K2.5—the impairment of the integrity of law enforcement activities and the discriminatory effects on faithful officers passed over for promotion by virtue of Clemente's corrupt activities has not been measured by the guideline calculation; U.S.S.G. sec. 5K2.7—the disruption of vital governmental functions; and U.S.S.G. sec. 5K2.-14—the significant danger to public safety posed by Clemente's corruption.

if any departure from the guidelines were to be warranted in this case, it would appear to be an upward departure.[3] In any event, a guideline sentence at the high end of the range would exceed by nearly one year the practical effect of the sentence actually imposed which gives Mr. Clemente a parole eligibility from his federal sentence within five years of the date of its commencement.

Last, what of the consecutive nature of the sentence—the issue to which both the government and Mr. Clemente most strongly address themselves? There is a statutory presumption that sentences imposed at different times ordinarily run consecutively. *See* 18 U.S.C. sec. 3584(a) (1982) ("multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently"). As originally promulgated, U.S.S.G. sec. 5G1.3 (April 1987) gave effect to this statutory presumption as follows:

> If at the time of sentencing, the defendant is already serving one or more unexpired sentences, then the sentences for the instant offense(s) shall run consecutively to such unexpired sentences, unless one or more of the instant offense(s) arose out of the same transactions or occurrences as the unexpired sentences.

Since the Depositors Trust larceny had nothing to do with the police examination scam, the sentencing guidelines as originally promulgated would appear to have mandated consecutive sentences.

The original guideline has, however, been amended effective November 1, 1989. *See* United States Sentencing Commission, *Guidelines Manual* sec. 5G1.3 (Nov.1989). The amended guideline section 5G1.3 requires consecutive sentences only when the offense for which sentence is being imposed "was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status)." The commentary to this section explains:

> Where the defendant is serving an unexpired term of imprisonment, but did not commit the instant offense while serving that term of imprisonment, the sentence for the instant offense may be imposed to run consecutively or concurrently with the unexpired term of imprisonment. The court may consider imposing a sentence for the instant offense that results in a combined sentence that approximates the total punishment that would have been imposed under sec. 5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which sentences were being imposed at the same time. Where the defendant is serving a term of imprisonment for a state offense, the information available may permit only a rough estimate of the total punishment that would have been imposed under the guidelines. It is not intended that the above methodology be applied in a manner that unduly complicates or prolongs the sentencing process.

U.S.S.G. sec. 5G1.3, comment. While this Court is in no way required to do so, were it to follow the methodology set out in the above commentary, having taken account of the factors set forth in 18 U.S.C. sec. 3553(a) (1982), this Court is amply satisfied that the sentence originally imposed herein "results in a combined sentence that approximates the total punishment that would have been imposed [under the guidelines]" had all of the offenses been federal offenses for which sentences were being imposed at the same time having in mind that, as one of the offenses being con-

---

The ground for downward revision is found in U.S.S.G. sec. 5K1.1—substantial assistance to authorities.

3. In deciding how far to depart, were this Court to be faced with the responsibility for doing so, it seems that it is best to consider a structured departure, that is, to figure out what the guideline would have been if the criminal history category were higher or if some other measurable factor had been considered. In this case, the only measurable factor is the criminal history. It might be reasonable were the Court to use this approach to raise the Criminal History Category from a Category II to a Category III *justified by reasons set forth at U.S.S.G. sec. 4A1.3—Adequacy of Criminal History.* This new Category would, for example, yield a sentencing range of 63–78 months.

sidered is a state estimate of the total punishment that would have been imposed under the guidelines" is possible.

Having thoroughly considered the matter afresh, this Court is satisfied that the sentence originally imposed was just and the motion for reduction is DENIED.

II. *John A. DeLiere and Nickolas Salerno*

The government having opposed the motions for reduction of sentence brought by John A. DeLiere and Nicholas Salerno, and there being no compelling reason to reconsider the sentences imposed in those cases, such motions are DENIED without hearing.