COMMONWEALTH vs. JOHN CORDEIRO.
(and a companion case [1]).

Bristol.  November 3, 1987. — March 10, 1988.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Rape. Practice, Criminal,* Disclosure of evidence, Discovery, Severance,
Public trial, Cameras in courtroom, Fair trial, Instructions to jury. *Due
Process of Law,* Fair trial. *Evidence,* Prior conviction, Impeachment of
credibility. *Witness,* Credibility.

An order by the judge at a rape trial prohibiting photographing or filming the
victim while she was in the courtroom was not an abuse of his discretion
under S.J.C. Rule 3:09, Canon 3 (A) (7). [846-848]
Where the judge at a criminal trial had acted within his discretion under
S.J.C. Rule 3:09, Canon 3 (A) (7), in restricting the use of cameras in
the courtroom, a defendant claiming that the restriction had violated his
constitutional due process rights bore the burden of showing that he
suffered prejudice. [848-849]
In the context of a rape trial during which electronic news media had been
present, an order by the judge, permissible under S.J.C. Rule 3:09,
Canon 3 (A) (7), prohibiting photographing or filming the victim while
she was in the courtroom did not infringe the defendant's constitutional
rights either by creating an extraneous influence on the jury or by ad-
versely implicating the presumption of innocence. [849]
Defendants at a rape trial were not entitled, either constitutionally or as matter
of common law, to have the jury instructed that they were to be governed
by a defendant's subjective belief in considering a claim that that defend-
ant was mistaken as to whether the victim had consented to sexual
intercourse. [849-851]
No compelling prejudice to a defendant entitled him to have his rape trial
severed from that of his codefendant where their respective claims of
"mere presence" and consent were not mutually exclusive or irreconcil-
able and where, moreover, the jury were warranted in finding that defend-
ant guilty on the basis of eyewitness testimony and his own properly
admitted confession. [851-853]
The circumstances of a criminal defendant's prior conviction of assault by
means of a dangerous weapon, a utility knife, did not bear such substantial
similarity to the crime of aggravated rape, for which he was being tried,

[1] Commonwealth *vs.* Victor Raposo.

as to preclude the prosecution from offering evidence of the prior conviction to impeach the defendant, should he choose to testify, even though the evidence at the rape trial included the suggestion that one of the assailants had wielded a knife. [853-855]

INDICTMENTS found and returned in the Superior Court Department on March 16, 1983.

The cases were tried before *William G. Young,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Kenneth L. Sullivan (J. Drew Segadelli* with him) for John Cordeiro.

*John F. Palmer* for Victor Raposo.

*Phillip L. Weiner,* Assistant District Attorney (*Patricia O. Ellis,* Assistant District Attorney, with him) for the Commonwealth.

LYNCH, J. After a trial in the Superior Court, separate from the trial of codefendants Joseph Vieira and Daniel Silvia, *ante* 828 (1988), the defendants, John Cordeiro and Victor Raposo, were found guilty of aggravated rape. G. L. c. 265, § 22 (*a*) (1986 ed.).[2] Each was sentenced to a term of from nine to twelve years at the Massachusetts Correctional Institution at Cedar Junction. They appeal from their convictions and from the denial of their motions for a new trial. We transferred the cases here on our own motion and we affirm.

We recite here only those facts which augment or differ from those provided in *Commonwealth* v. *Vieira, ante* 828 (1988), decided today. The jury in the trial of Cordeiro and Raposo would have been warranted in finding that, as Silvia was on top of the victim on the floor in the narrow area next to the bar, Raposo attempted to force the victim to perform fellatio. After the victim had been placed on the pool table, Cordeiro forced the victim to perform fellatio. While she was on the pool table, Raposo told the crying victim that she should be quiet and they would let her go.

---

[2] Two other codefendants were acquitted.

Cordeiro and Raposo jointly claim that the judge's order prohibiting camera coverage of the victim was an abuse of discretion under S.J.C. Rule 3:09, Canon 3 (A) (7), as appearing in 387 Mass. 1218 (1983), and prejudiced their right to a fair trial. Second, they contend that the judge erred in refusing to instruct as requested on the defense of consent. Additionally, they join in the claims of Vieira and Silvia regarding delayed disclosure of exculpatory evidence. See *Commonwealth* v. *Vieira, ante* at 831, 837 nn. 4 & 8. Individually, Raposo contends that the judge's rulings regarding severance and the admissibility of evidence of a prior conviction for impeachment purposes constituted prejudicial error requiring a new trial.

1. *Electronic media coverage.*[3] Prior to trial, the Commonwealth filed a motion to limit media coverage, seeking, inter alia, to preclude camera coverage of the victim during the trial. A supporting affidavit filed by the victim attested to concerns about the impact of media coverage on herself and her children, and, consequently, on her feelings about testifying.[4] Hearings were held at which various media interests were represented. The judge conducted extensive voir dire of prospective jurors as to the potential influence of the presence of cameras at trial

[3] Vieira and Silvia (see *Commonwealth* v. *Vieira, ante* at 830) join in this issue, pursuant to Mass. R. A. P. 16 (j), 365 Mass. 860 (1974).

[4] The relevant portions of the victim's affidavit provided:

"2. That I have two young children.

"3. That I have continuously and conscientiously sought not to disclose to the public as well as to my children my involvement in that Big Dan's incident so as to avoid disruption and harassment in my life and the lives of my children as well as to allow the normal growth of my children that I care for deeply.

"4. That my efforts to date have generally succeeded in allowing myself and my children to live in our chosen neighborhood without great disruption and without being identified as the victim in this incident.

"5. That I desire to continue to live in this area and that I do not intend to disclose my identity after this trial or trials but rather intend to live inconspicuously in my chosen neighborhood.

"6. That I have shunned talk shows and media offers in the past because of my desire not to disclose my identity.

"7. That at the present time I am worried, concerned, and alarmed about testifying because of the possibility that my identity will be public[ ]ly revealed through the media photographs, my picture."

on their ability to evaluate fairly and impartially the evidence. After the jury were empanelled and sequestered, the judge prohibited all news media from photographing or filming the victim during her testimony or while she was present in the courtroom.[5] Other aspects of his order, not challenged here, addressed the general conduct of media coverage during the course of the trial.

On appeal, the defendants contend that the order exempting the victim from camera coverage (1) was an abuse of discretion under S.J.C. Rule 3:09, Canon 3 (A) (7),[6] and (2) prejudiced their right to a fair trial where the jury were aware that the victim was accorded special treatment with regard to camera coverage.[7]

a. *Abuse of discretion.* The defendants contend that the evidence adduced in support of the Commonwealth's motion to limit media coverage was insufficient to support what they assert to be the requisite finding that camera coverage of the victim "*will* create a substantial likelihood of harm to any person." S.J.C. Rule 3:09, Canon 3 (A) (7) (a), as appearing in 387 Mass. 1218, 1219 (1983) (emphasis supplied). In support of this argument, the defendants seek to rely on cases dealing with the constitutionality of limiting public or press

[5] A television station seeking, pursuant to G. L. c. 211, § 3 (1986 ed.), to broadcast the victim's testimony was denied relief from this order by a single justice of this court. WLNE-TV vs. Superior Court, S.J.C. No. 84-79 (1984). No appeal was taken.

[6] In pertinent part, S.J.C. Rule 3:09, Canon 3 (A) (7), as appearing in 387 Mass. 1218, 1219 (1983), provides: "A judge shall permit broadcasting, televising, electronic recording, or taking photographs of proceedings open to the public in the courtroom by the news media for news gathering purposes and dissemination of information to the public, subject, however, to the following limitations: (a) A judge may limit or temporarily suspend such news media coverage, if it appears that such coverage will create a substantial likelihood of harm to any person or other serious harmful consequence."

[7] An affidavit filed by counsel for Raposo in support of the motion for a new trial alleged facts in connection with her review of a videotaped interview of a juror in the trial of Silvia and Vieira. On that videotape, conducted and broadcast after the verdicts, the juror was reported to have told the interviewer that he could tell that camera coverage of the victim was prohibited during her testimony. The juror was filmed, saying, "They should be granted that privilege in not having to be on camera. I mean, they're . . . they're going through a rape again."

access to criminal trials for the proposition that there should be a more particularized determination and stronger showing of need on the part of the individual before any restriction of media coverage is justified, e.g., *Globe Newspaper Co.* v. *Superior Court,* 457 U.S. 596 (1982) (Massachusetts statute requiring *mandatory* closure of courtroom to press and general public during testimony of minor victims of sexual offenses violates First and Fourteenth Amendments to the United States Constitution).

Such reliance is misplaced. Even assuming that the defendants have standing to raise such issues, it has not been argued that this case implicates public or press rights of access to trial. See *In re Petition of Post-Newsweek Stations, Fla., Inc.,* 370 So. 2d 764, 774 (Fla. 1979) (rejecting the argument that the First Amendment mandates entry of the electronic media into judicial proceedings). Nor do the defendants argue that, as applied, the rule violates their right to a public trial under the Sixth Amendment to the United States Constitution. "The requirement of a public trial is satisfied by the opportunity of members of the public and the press to attend the trial and to report what they have observed." *Nixon* v. *Warner Communications, Inc.,* 435 U.S. 589, 610 (1978). We, therefore, do not view the rule as requiring the same showing of particularized individual need or compelling State interest as is required before interests of constitutional dimension may be infringed.

What *is* required, as a matter of State law, to justify a limitation on electronic media coverage, is delineated in the rule which provides that electronic media coverage may be limited or suspended "if it *appears* that such coverage will create a substantial likelihood of harm to any person or other serious harmful consequence" (emphasis added). This language is to be interpreted in accordance with the broad discretion of the judge in handling trial publicity and other matters pertaining to the conduct of a trial. See *Commonwealth* v. *Cameron,* 385 Mass. 660, 668 (1982); *Commonwealth* v. *Bohmer,* 374 Mass. 368, 380-381 (1978). In the context of the notoriety and unusual facts of these cases, the affidavit of the victim was sufficient

to permit the judge to find a substantial likelihood of harm to her. Moreover, it was within the discretion of the judge to consider the likelihood of harmful consequences to the State's interest in protecting witnesses and in its attendant ability to prosecute alleged perpetrators of sexual offenses. Indeed, the Supreme Court has expressly approved safeguards "to protect certain witnesses — for example . . . victims of sex crimes . . . — from the glare of publicity and the tensions of being 'on camera.' " *Chandler* v. *Florida,* 449 U.S. 560, 577 (1981). We conclude that no error arose from the judge's order prohibiting camera coverage of the victim.

b. *Constitutional prejudice.* The crux of the defendants' constitutional argument is that their due process rights were violated, not by the presence of cameras in the courtroom, but by the distinctive treatment accorded the victim. They contend that the jury's awareness of such treatment, as evidenced by the affidavit described in note 7, *supra,* constituted an extraneous influence on the jury such that, in the analysis of constitutional prejudice, the burden should be placed on the Commonwealth "to show beyond a reasonable doubt that [the defendants were] not prejudiced by the extraneous matter." *Commonwealth* v. *Fidler,* 377 Mass. 192, 201 (1979).[8] Additionally, the defendants analogize the prejudice alleged to flow from the distinctive and "preferential" treatment of the victim to the sort of prejudice to the right to be presumed innocent which may result from distinctive treatment of a defendant, citing *Estelle* v. *Williams,* 425 U.S. 501, 503 (1976) (defendant in prison garb), and *Commonwealth* v. *Young,* 382 Mass. 448, 461-462 (1981) (defendant in dock), *S.C.,* 399 Mass. 527 (1987).

Matters pertaining to the conduct of a trial are generally discretionary and the burden is on the defendant to demonstrate prejudice justifying reversal. *Commonwealth* v. *Cameron, supra.* "[N]ot every incident or circumstance which focuses

---

[8] Thus, the defendants contend that the judge erred in placing the burden on them to demonstrate specific prejudice as in the case of claims of prejudice relating to the presence of cameras. See *Chandler* v. *Florida, supra*; *Commonwealth* v. *Burden,* 15 Mass. App. Ct. 666, 677-678 (1983).

the jury's attention on the fact that the defendants are the persons on trial can be considered to invade constitutional rights." *Commonwealth* v. *Campbell,* 378 Mass. 680, 697 n.14 (1979). Where, as here, the judge gave lengthy and clear instructions on the presumption of innocence, the nature of evidence, and the jury's role as the sole finder of credibility,[9] there was no abuse of discretion.

Where the judge found that the jury were aware that the victim was not subject to camera coverage, the remaining issue is whether this distinctive treatment constitutes an extraneous influence such that the burden should shift to the Commonwealth to show beyond a reasonable doubt that the defendants were not prejudiced. We hold that, where the judge's order was within the discretion accorded by S.J.C. Rule 3:09, Canon 3 (A) (7) (a), the burden remains on a defendant to show prejudice.[10] As in the case of alleged error relating to the presence of cameras or the broadcast of a trial, e.g., *Commonwealth* v. *Burden,* 15 Mass. App. Ct. 666 (1983), a defendant bears the burden of showing prejudice relating to properly ordered limitations on electronic media coverage. To hold otherwise would be tantamount to saying that a proper discretionary order of a trial judge pertaining to the conduct of the trial could be collaterally attacked as creating an extraneous influence on the jury's deliberations. Therefore, we conclude that the order pertaining to media coverage did not deprive the defendants of a fair trial either by creating an extraneous influence on the jury or by adversely implicating the presumption of innocence.

2. *Jury instructions regarding the defense of mistake of fact.* At trial, the judge instructed the jury, "If, from all the evidence, you have a reasonable doubt whether a particular defendant reasonably and in good faith, believed that [the victim] volun-

---

[9] The defendants also assert the jury may have construed preferential treatment of the victim as the judge's vouching for the credibility of the victim against that of the defendants.

[10] We need not decide what showing of prejudice is required. Cf. *Chandler* v. *Florida, supra; Commonwealth* v. *Burden, supra* (adopting specific prejudice standard).

tarily consented to engage in sexual intercourse, you must give the defendant as to whom you have that reasonable doubt, the benefit of it, and acquit him of that charge." Counsel for Cordeiro requested an instruction, which was refused, that, "if there's no force applied by the defendant and he subjectively, in good faith, feels that she is consenting and she subjectively feels she is not, unless there is some manifestations, then if he's acting in good faith, then he should be found not guilty." Counsel for Raposo objected to the charge on mistake of fact under the objective, "reasonable man," standard and to the instructions on intent which she viewed as an instruction on general rather than specific intent.

On appeal, the defendants argue that the judge's failure to charge as requested on criminal intent denied the defendants their right to a fair trial and due process under the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. They argue that the requirement of reasonableness, alluded to in *Commonwealth v. Grant,* 391 Mass. 645 (1984), and adopted by the judge, is illogical, where the determinative issue in a mistake of fact defense should be whether the belief is genuine, not whether it is reasonable. The defendants contend they were not afforded due process because the judge's instruction reduced criminal culpability to a standard of mere negligence. We do not agree.

First, we note that the charge to the jury comported with the law of the Commonwealth on the issue of the intent required for a conviction for rape, see *Commonwealth v. Sherry,* 386 Mass. 682 (1982). Therefore, unless some constitutional requirement imposes a different standard, the judge acted properly in refusing to give a requested instruction at odds with the law. *Commonwealth v. Bucaulis,* 6 Mass. App. Ct. 59, 67, cert. denied, 439 U.S. 827 (1978). The defendants point to no constitutional principle or decision that would require the adoption of the rule of subjective intent they claim is applicable. Moreover, the judge gave the defendants the benefit of an instruction which went further than that required by *Sherry.* He placed a burden upon the Commonwealth to prove that each defendant "would know" that the victim "did not consent

to the acts of sexual intercourse," and charged the jury that the intent required was "that specific intent of forcing her to do it against her will."[11] There was no error and the defendants' contentions of prejudice are without merit.

3. *Raposo's motions to sever.* Relying on *Commonwealth* v. *Moran,* 387 Mass. 644 (1982), Raposo argues that he was deprived of his Federal and State constitutional rights to a fair trial by the judge's refusal to sever his trial from that of Cordeiro, where Cordeiro's defense of consent was inconsistent with and antagonistic to Raposo's defense of "mere presence." It is further asserted that such compelling prejudice was compounded by the Commonwealth's ability to use Cordeiro's testimony to bolster its case against Raposo.

Apart from the substance of Raposo's arguments, there exists a question whether Raposo is procedurally barred from raising this contention, for failure to renew his motion for severance in a sufficiently timely or specific fashion after Cordeiro's direct testimony. See *id.* at 659-660. Relying on *Commonwealth* v. *Buckley,* 17 Mass. App. Ct. 373, 374 (1984), Raposo contends that, although the judge found the issue waived, it was resurrected for purposes of appeal where the judge nonetheless addressed the merits in the context of the motions for a new trial. We do not resolve this procedural issue, since we conclude that no substantial risk of a miscarriage of justice or compelling prejudice arises out of Raposo's joinder for trial with Cordeiro.

Although Raposo premised his claims of prejudice upon the Federal and State Constitutions, we initially note that, where Cordeiro testified and was subject to cross-examination, the joinder here does not implicate Raposo's rights of confrontation. See *Bruton* v. *United States,* 391 U.S. 123 (1968); *Com-*

---

[11] This instruction was more favorable to the defendant than was required. The Commonwealth is not required to prove either that the defendant intended the sexual intercourse be without consent or that he had actual knowledge of the victim's lack of consent. *Commonwealth* v. *Grant, supra* at 650, 651. *Commonwealth* v. *Sherry, supra.*

*monwealth* v. *Bongarzone,* 390 Mass. 326 (1983).[12] Here, Cordeiro testified to a version of the events in which he not only admitted to having oral sexual intercourse with the victim but also stated that Raposo did so first. He testified, however, that, throughout the events, the victim was laughing or giggling and was consenting, or at least appeared to be consenting. Furthermore, Cordeiro denied both that he had stated to the police that he and Raposo had held the victim's legs and that the victim had been screaming and crying.[13] Although Cordeiro provided incriminating evidence, he also provided a consent defense for Raposo as well as for himself, which, Raposo contends, was inconsistent with and antagonistic to his own defense.[14] Raposo argues that he was, therefore, unfairly prejudiced by being forced to defend against his codefendant as well as the prosecution. *State* v. *Clarke,* 448 A.2d 1208 (R.I. 1982).

The judge found, based upon substantial evidence, that Raposo's defense was also, at least partially, one of consent.[15]

---

[12]Raposo's assertion that his arguments are predicated upon both the Fourteenth Amendment and art. 12 does not rise to the level of appellate argument. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). Moreover, the holding of *Moran* upon which the defendant relies was not based on either State or Federal constitutional law. See *Commonwealth* v. *DiCato,* 19 Mass. App. Ct. 40, 42 (1984).

[13]Earlier in the trial, the prosecution elicited the testimony of two police officers regarding Cordeiro's statements to the police the day after the incident. The substance of this testimony constituted a confession to all the elements of the crime of aggravated rape. All of the out-of-court statements which included acts attributed to Raposo were appropriately limited by the judge to the case against Cordeiro only. Similarly, the police officers testified to Raposo's initial denial of any involvement and subsequent admission that he held the victim's leg and exposed his penis intending to have her perform fellatio, but that he then "couldn't do it." Thus, Raposo's confession was properly admitted against Raposo only.

[14]Raposo did not testify. He views the heart of his defense as the weakness of the prosecution's case regarding his participation in the illegal acts. For his defense he relied heavily on the victim's own testimony that he did not commit any sexual acts himself, but rather had "talked" to her. The victim's testimony was that "[h]e was just telling me, you know, to be quiet. That the more quieter I was, they would let me go, and stuff."

[15]Indeed, one of Raposo's asserted grounds for a new trial is the judge's failure to instruct as requested on a mistake of fact defense.

We assume for purposes of our analysis that, had he been tried separately, Raposo would not have argued a consent defense. Nonetheless, we conclude that the codefendants' respective defenses of "mere presence" and consent, while inconsistent in the context of Cordeiro's testimony, are not mutually exclusive or irreconcilable. Unlike *Commonwealth* v. *Moran, supra,* this was not a case where Cordeiro's only realistic defense consisted of shifting blame for a single criminal act to Raposo, thereby "invit[ing] his perjured testimony" and creating "a danger that the jury will feel compelled to choose between defendants rather than to assess the proof against each defendant separately." *Id.* at 659. Where Cordeiro's inculpation of Raposo in consensual sexual relations was incidental to his own defense, the jury's acceptance of his defense would not have precluded acquittal of Raposo.

More importantly, no matter how inconsistent or antagonistic the defenses or trial strategies of the two defendants, there is no compelling prejudice and therefore no requirement of severance where the jury were warranted in finding Raposo guilty of the crime of aggravated rape on the basis of the eyewitness testimony of the bartender and Raposo's own properly admitted confession. *Commonwealth* v. *Sinnott,* 399 Mass. 863, 874-875 (1987). See *United States* v. *Palow,* 777 F.2d 52, 55 (1st Cir. 1985), cert. denied, 475 U.S. 1052 (1986) ("severance not required when joinder has resulted in the admission of evidence that would have been admissible in a separate trial"). Moreover, Cordeiro's testimony would have been available to the prosecution at a severed trial; his extrajudicial statement which inculpated Raposo and was then contradicted by his trial testimony, was merely cumulative of Raposo's own confession. We conclude that there is no compelling prejudice which would have required severance and, therefore, no substantial risk of a miscarriage of justice.

4. *Raposo's motion to exclude evidence of prior convictions.* Raposo's final contention is that the judge abused his discretion in denying his motion to exclude, for purposes of impeachment, evidence of a prior conviction for assault by means of a dangerous weapon, a utility knife. The question on appeal is whether

there was an abuse of discretion in admitting the evidence of a prior conviction because "the danger of unfair prejudice outweighed the probative value of the evidence of a prior conviction for the purposes of impeachment." *Commonwealth v. Maguire,* 392 Mass. 466, 470 (1984).

The record reveals that, prior to trial, the Commonwealth indicated that, if Raposo testified, it would seek to impeach his credibility through the use of convictions for indecent exposure and assault by means of a dangerous weapon. The judge granted the defendant's motion to exclude evidence of the conviction for indecent exposure,[16] but left open the issue of the assault conviction to permit a limited voir dire, apparently on the question whether Raposo had been represented by counsel. At the close of the Commonwealth's case, Raposo renewed his motion to exclude this conviction in light of testimony suggesting that at least one of the defendants wielded a knife. The motion was denied with no request for a voir dire. Raposo did not testify.

As in *Commonwealth* v. *Fano,* 400 Mass. 296, 301 n.9 (1987), we assume, without deciding, that, contrary to the decision of the Supreme Court in *Luce* v. *United States,* 469 U.S. 38, 43 (1984), a defendant need not testify to preserve for review a claim that a motion to exclude impeachment evidence of a prior conviction was improperly denied. We find no abuse of discretion.

At the time the judge made his ruling, he had before him all the evidence to be presented by the Commonwealth and was, therefore, able to weigh the prejudicial effect and probative value of the impeaching evidence.[17] See *Commonwealth* v. *Diaz,* 383 Mass. 73, 81-82 (1981). Contrast *Commonwealth* v. *Gonzalez,* 22 Mass. App. Ct. 274, 279 (1986). While a conviction for assault by means of a dangerous weapon does

---

[16] Defense counsel suggested that the underlying criminal act was urinating in public.

[17] We also note that, as defense counsel did not request a voir dire on the question of representation by counsel in the assault proceeding, the judge was entitled to rely on the court records indicating that Raposo did have representation.

not involve conduct directly demonstrating dishonesty or untruthfulness, we have recognized that "a defendant's earlier disregard for the law may suggest to the fact finder similar disregard for the courtroom oath." *Commonwealth* v. *Fano, supra* at 302-303, quoting *Commonwealth* v. *Roucoulet,* 22 Mass. App. Ct. 603, 608 (1986). See *Commonwealth* v. *Walker, ante* 338, 346 (1987). We have indicated that substantial similarity of the crimes is an important factor in determining whether the danger of unfair prejudice exists. The prior conviction for assault by means of a dangerous weapon and the crime of aggravated rape for which the defendant was being tried bear no such substantial similarity. See *Commonwealth* v. *Elliot,* 393 Mass. 824, 832-834 (1985); *Commonwealth* v. *Maguire,* 392 Mass. 466, 470-471 (1984). The fact that the dangerous weapon involved in the prior conviction was a knife and that there was evidence here that one of the assailants held a knife does not establish such substantial similarity. Therefore, admission of evidence of a prior conviction for assault by means of a dangerous weapon did not create the danger that the defendant would be convicted by "proof of his . . . propensity to commit similar crimes." *Commonwealth* v. *Fano, supra* at 303, quoting *Commonwealth* v. *DiMarzo,* 364 Mass. 669, 681 (1974) (Hennessey, J., concurring).

*Judgments affirmed.*