COMMONWEALTH *vs.* JOSE MARTINEZ (and a companion case[1]). No. 93-P-1055. November 18, 1994. *Practice, Criminal,* Trial of defendants together, Severance, Instructions to jury. *Controlled Substances.*

A transaction for the sale of a kilogram of cocaine resulted in indictments against Jose Sanchez, Jose Martinez, and Jose Lugo, alleging trafficking in 200 grams or more of cocaine. G. L. c. 94C, § 32E(*b*)(4). Lugo defaulted, and the case against Sanchez and Martinez went forward before a jury in Superior Court. Upon their conviction, the judge imposed the mandatory minimum sentence called for in the statute, fifteen years at M.C.I., Cedar Junction. On appeal, Martinez contends, among other things,[2] that his motion for severance was improperly denied, and both

---

[1]Commonwealth *vs.* Jose Sanchez.

[2]None of the other issues raised merit lengthy discussion. (1) The evidence before the grand jury and at trial was more than adequate to prove that Sanchez and Martinez were the source of the cocaine delivered by Lugo to the undercover police officer. (2) Although a confidential informant played an active role in arranging the initial meeting between the undercover officer and Lugo, none of the Commonwealth witnesses testified that the informant was present when the transaction was consummated or that he was even seen in the presence of Sanchez or Martinez. Sanchez referred to the presence of a "white guy," or "an American guy," but there was no evidence that the person so described was the informant. The judge did not err, therefore, in concluding that an insufficient showing had been made that disclosure of the informant's identity would have helped the defense. See *Commonwealth* v. *Real*, 19 Mass. App. Ct. 906, 908 (1984). Cf. *Commonwealth* v. *Ennis*, 1 Mass. App. Ct. 499, 502 (1973). (3) The judge properly denied Martinez's motion for a mistrial

Sanchez and Martinez contend that the judge's instructions defining the offense were inadequate. We affirm.

*Martinez's right to severance.* The Commonwealth presented evidence that after Lugo and Peabody Police Officer Scott Carriere, posing as a buyer, negotiated the sale of a kilo of cocaine for $28,000, Carriere proceeded in a truck to another location where he received further instructions about the transaction from Lugo. Carriere, following Lugo's directions, then drove to yet another location where the drugs were to be delivered. There, Carriere observed a small white vehicle circle his truck twice before stopping next to the car being operated by Lugo. The occupants of the white vehicle approached Carriere and engaged in a discussion of the transaction. Lugo drove off. Forty minutes later, the white car circled Carriere's truck again and then drove away. Lugo then returned, left his car, and delivered the drugs to Carriere, whereupon Lugo was placed under arrest. Other police officers, who had been observing the scene, approached the white car, which immediately sped away. It was eventually stopped, and Sanchez, the driver, was arrested. The other occupant escaped. Officers who had known him previously recognized the other occupant by voice and appearance as the defendant, Martinez. Some weeks later, Martinez turned himself in to the police.

Shortly after his arrest, Sanchez made a statement to the police implicating Martinez as the drug dealer and professing his own ignorance of the intended transaction. During pretrial discussions about a joint trial, the Commonwealth agreed not to use Sanchez's statement, and Martinez filed no pretrial motion for a severance of his trial from that of Sanchez. The Commonwealth presented its case at trial without mentioning the statement. Martinez, through cross-examination, questioned whether the witnesses might have mistaken him for his brother, whom he resembled. After the Commonwealth's evidence was closed, Martinez rested without putting on any witnesses. Sanchez's attorney then called Sanchez to the stand. Martinez moved for severance on the ground that his defense and that of Sanchez had become antagonistic. The judge denied the motion for severance as untimely because Martinez's counsel had known about Sanchez's statement before trial and had not previously asked for severance.

Sanchez testified, more or less in conformity with his statement, that Martinez was the other occupant of his car. Martinez then reopened his defense, putting on several witnesses to challenge Sanchez's credibility.

---

based upon surprise testimony on cross-examination of a police witness to the effect that fingerprinting testing had been conducted on the bag containing the drugs and that the results were inconclusive. Although more timely disclosure should have been made, there was no showing either that the inconclusive test results could have been helpful to Martinez, see *Commonwealth* v. *Lam Hue To*, 391 Mass. 301, 309 (1984), or that there were adverse consequences as a result of the delay, see *Commonwealth* v. *Wilson*, 381 Mass. 90, 114 (1980), *S.C.*, 399 Mass. 455 (1987).

We do not think denial of the motion to sever constituted reversible error.[3] "The failure seasonably to move to sever provide[d] sufficient ground, in itself, for the judge's denial of the defendant's . . . motion[ ]." *Commonwealth* v. *DiCato*, 19 Mass. App. Ct. 40, 43 (1984). Such a motion may be timely if made during trial, but only if based upon a ground not previously known. Mass.R.Crim.P. 9(d)(2), 378 Mass. 859 (1979). See *Commonwealth* v. *Moran*, 387 Mass. 644, 660 (1982); *Commonwealth* v. *Williams*, 399 Mass. 60, 65 (1987). Martinez knew about Sanchez's statement before trial and, absent any pretrial agreement to the contrary, should have anticipated that Sanchez might choose to testify.

Even were the motion timely, however, in the circumstances, reversal would not be required. The decision whether to sever generally resides within a judge's discretion, and a defendant bears a heavy burden in attempting to have such a discretionary determination reversed on appeal. See *Commonwealth* v. *Cepulonis*, 374 Mass. 487, 499 (1978); *Commonwealth* v. *Moran*, 387 Mass. at 658. The defenses were not antagonistic and irreconcilable in the sense of *Commonwealth* v. *Moran, supra* at 659, where the "only realistic escape for either defendant was to blame the other." Here Sanchez attributed the decision to engage in a drug deal to Martinez, but he did not deny his own presence at the scene, and Martinez did not attempt to place the blame on Sanchez alone.

Martinez is relying on a somewhat different principle. In *United States* v. *Johnson*, 478 F.2d 1129 (5th Cir. 1973), the court recognized a right to severance where one defendant denied being involved in a crime, and a codefendant contradicted that defense by placing the defendant at the scene. See also *United States* v. *Fusaro*, 708 F.2d 17, 25 (1st Cir.), cert. denied, 464 U.S. 1007 (1983); *United States* v. *Palow*, 777 F.2d 52, 55 n.1 (1st Cir. 1985), cert. denied, 475 U.S. 1052 (1986); *United States* v. *Pacheco*, 794 F.2d 7, 9 (1st Cir. 1986). In such a situation, the codefendant has become the best witness for the prosecution on the crucial issue of identification and, as a practical matter, the defenses have become irreconcilable. In the *Johnson* case, however, there was scant evidence in the record, apart from the codefendant's testimony, that placed the defendant at the scene of the crime. In the instant case, three eyewitnesses identified Martinez, and, although defense counsel introduced evidence of Martinez's resemblance to his brother, their testimony was not shaken on cross-examination. Where such eyewitness testimony would support a finding of guilt even apart from a codefendant's testimony, severance is not required. See *Commonwealth* v. *Sinnott*, 399 Mass. 863, 875 (1987); *Commonwealth* v.

---

[3]The Sixth Amendment right recognized in *Bruton* v. *United States* is not implicated in this case because Sanchez took the stand and was subject to cross-examination by Martinez's counsel. See *Bruton* v. *United States*, 391 U.S. 123 (1968); *Commonwealth* v. *Cordeiro*, 401 Mass. 843, 851 (1988).

*Cordeiro*, 401 Mass. 843, 853 (1988); *Commonwealth* v. *Burr*, 33 Mass. App. Ct. 637, 639 (1992). In any event, Sanchez's testimony would have been available to the prosecution at a severed trial, see *Commonwealth* v. *Cordeiro*, *supra*, and, therefore, there was no prejudice, let alone compelling prejudice, which would have required severance.

*Instructions on elements of the offense.* The defendants were charged with trafficking in 200 or more grams of cocaine in violation of G. L. c. 94C, § 32E(*b*)(4), an offense which carries a mandatory minimum fifteen-year sentence. The judge instructed the jury in preliminary instructions before trial and in his final instructions, that, among the elements of the offense, the Commonwealth had to prove beyond a reasonable doubt "that the amount of cocaine possessed by the defendant was fourteen grams or more." For trafficking in between fourteen and twenty-eight grams, the mandatory minimum sentence is three years. Conviction in this case required proof beyond a reasonable doubt that the defendants possessed at least 200 grams of cocaine. Compare *Commonwealth* v. *Walters*, 12 Mass. App. Ct. 389, 394 (1981).

Martinez's attorney objected to the judge's failure to instruct the jury that they had to find beyond a reasonable doubt that the defendant possessed at least 200 grams of cocaine. The judge declined to change the instruction and proceeded to discuss the verdict slips. He said, "As I explained to you, fourteen grams or more is trafficking, but the indictment in this case alleges 200 grams or more. So that's what we have in the verdict slip." He moved immediately to the procedural steps to submit the case to the jury. Although Martinez's attorney made no further objection before the jurors retired to deliberate, there was no real opportunity for him to do so.

The instruction was erroneous, and Martinez made a proper objection. The judge's subsequent remark about the indictment did not cure the error; the jurors still had not been told that they had to find beyond a reasonable doubt that the weight of the cocaine sold was at least 200 grams. A further objection, after the judge had expressed confidence in the correctness of his original instruction, and after the jury had retired, would have been fruitless. The standard of review, at least with respect to Martinez's conviction, therefore, is one of prejudicial error. See *Commonwealth* v. *Mejia*, 407 Mass. 493, 497 (1990).

No serious issue was raised at trial as to the weight of the drugs involved; the evidence was that they weighed 1,000 grams, clearly in excess of 200 grams. Given the weight of the drugs sold, any testimony from Sanchez that he believed Martinez was delivering only an ounce was immaterial. See *Commonwealth* v. *Rodriguez*, 415 Mass. 447, 453 (1993) (holding that defendant's actual knowledge of the quantity of cocaine not required for conviction of trafficking). In our view, no reasonable fact finder could have concluded that, if the defendants were in possession of the drugs, their weight was less than 200 grams. Contrast *Commonwealth*

v. *Walters*, 12 Mass. App. Ct. at 393 (affirming conviction but ordering resentencing where jurors were "warranted" in finding the property damaged to be worth more than one hundred dollars, but jury not instructed on essential element of value). The error in the instructions, therefore, was not prejudicial.

*Judgment affirmed.*

*Charles H. Robson* for Jose Sanchez.
*Ronald Ian Segal* for Jose Martinez.
*Robert J. Bender*, Assistant District Attorney, for the Commonwealth.

