MEMORANDUM AND ORDER
 

 HARRINGTON, District Judge.
 

 Edison Reynoso (“Petitioner”) petitions this Court for habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, the petition is denied.
 

 I.
 
 INTRODUCTION
 

 On May 20, 1994, petitioner was convicted on two indictments of trafficking in two hundred (200) grams or more of cocaine. Petitioner was sentenced to fifteen (15) to twenty (20) years in state prison on each indictment, to be served concurrently. Petitioner filed a timely notice of appeal to the Massachusetts Appeals Court. On March 3, 1998, the Massachusetts Appeals Court affirmed the convictions. On April 24, 1998, the Massachusetts Supreme Judicial Court denied petitioner’s request for further appellate review. On April 1, 1999, .the petitioner filed this Petition for Writ of Habeas Corpus. Petitioner alleges that he is entitled to' relief because “structural error occurred” when the trial judge failed to reiterate “beyond-a-reasonable-doubt” instructions for each of three weight categories of drug trafficking.
 
 [1]
 

 II.
 
 FACTUAL BACKGROUND
 

 The following factual findings, adapted from both the petitioner’s and the government’s briefs, form the basis of petitioner’s conviction:
 

 On October 8, 1992, an undercover police officer of the Bourne Police Department made arrangements to purchase ten ounces of cocaine for $8,000 at the Dartmouth Mall in Dartmouth, Massachusetts. The purchase was arranged by one Richard Fernandes, who drove with the undercover officer to the mall and explained that he had paged a man
 
 *153
 
 named Jeffrey Russell, using the code number 866. Russell was expected to arrive in a brown 1984 Oldsmobile.
 

 Twenty-five minutes later, Russell arrived in a brown Oldsmobile, driven by the Petitioner, Edison Reynoso. Russell handed the undercover officer a ten ounce bag of cocaine to inspect. At this time, the arrest team moved in and arrested all the participants. The petitioner was wearing a beeper which displayed the code number 866. The ten ounce bag handed to the undercover officer contained 263 grams of cocaine. Another five ounce bag found on Russell contained an additional 119 grams. A total of 382 grams of cocaine were recovered at the scene.
 

 A search warrant was then executed at an apartment in New Bedford, Massachusetts. An additional 355 grams were recovered at this apartment. Also found at this apartment were an electronic scale, approximately $13,000 in cash, drug sales records, plastic bags, a lease in the name of Franklin German (petitioner’s alias), and mail addressed to the petitioner at that address.
 

 III.
 
 JURY INSTRUCTIONS
 

 The sole issue in this Petition concerns the trial judge’s instructions to the jury. Any inquiry regarding allegedly erroneous jury instructions must begin by examining the instructions and their context as a whole.
 
 See Victor v. Nebraska,
 
 511 U.S. 1, 5, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994). The following are the challenged instructions:
 

 The crime charged by the Commonwealth in two indictments is possession with intent to distribute and trafficking in cocaine of twenty-eight grams or more. This offense. contains four elements of possession with intent to distribute plus a fifth element, that the amount of the controlled substance was twenty-eight grams or more. Our state legislature has specifically defined possession with intent to distribute cocaine in the statute, General Law Chapter 94C, Section 32E(b)(2). In order to prove the defendant guilty of possession with intent to distribute and trafficking in a controlled substance, the Commonwealth must prove five elements
 
 beyond a reasonable doubt.
 

 First, that the defendant possessed — and I’ll explain that term to you. Second, a controlled substance, to wit, cocaine. Third, that the defendant possessed that controlled substance knowingly and intentionally. Fourth, that the defendant had the specific intent to distribute. And in addition, trafficking requires the Commonwealth to prove
 
 beyond a reasonable doubt,
 
 in addition to those four elements of possession with intent to distribute, the fifth element, which is that the amount of cocaine was twenty-eight grams or more.
 

 Now, the first element that the Commonwealth must prove
 
 beyond a reasonable doubt
 
 is that the defendant possessed a controlled substance. Now, the law recognizes two kinds of possession'— actual possession and constructive possession. A person who has physical control over an object and has the intent to exercise such control is in actual possession of it. A person who knowingly has direct physical control over an object at a given time is then in actual possession. Actual possession implies control and power over an object. For example: I’ve got this pen in my hand; I know it’s a pen; I have control over it; I can do whatever I want with this pen; clearly I have possession and control over that pen. Possession, however, does not depend on the length of time one has an object in his or her control. Fleeting, even momentary, contact with an object may constitute actual possession, if, at the time of contact with the object, a person intends to exercise control and intends to exercise power over that object. Now, as to constructive possession. A person who although not in
 
 *154
 
 actual possession — that is, in his clutches — knowingly has both the power and the intention at any given time to exercise dominion, power, or control over an object, either directly or through another person or persons, is in constructive possession of that object. Thus, constructive possession means knowledge of the location of an object combined with the ability and intention to exercise dominion and control over it. To be in possession of an object, the person does not have to own the object. However, mere presence at the vicinity of a controlled substance, or mere knowledge of its physical location is not the equivalent of possession. As I indicated to you, the word possession means that a person has knowledge of the location of that object and the ability and intention to exercise control and power over it. Possession may be proven by circumstantial evidence and the reasonable inferences to be drawn from that evidence — and I’ve instructed you on that. Whether such an inference is reasonable in this case depends upon all the circumstances, and it is you that must decide what those circumstances were.
 

 The second element the Commonwealth must prove
 
 beyond a reasonable doubt
 
 is that the powder which the defendant possessed was a controlled substance, in this case cocaine, a Class B controlled substance. As a matter of law, cocaine is a controlled substance in Class B as defined in our General Laws. The Commonwealth must prove to you
 
 beyond a reasonable doubt
 
 that the substance that the defendant allegedly possessed was in fact cocaine. The statute defining possession does not require that the substance be in a pure form; any mixture will suffice. In this regard, a certificate of analysis has been marked as an exhibit in this case; that’ll be with you in the jury room. And there is a statute in the Commonwealth, General Law Chapter 111, Section 13, which provides, in part, that the certificate of analysis made by the Department of Public Health shall be — and the statute uses these words — prima facie evidence of the composition and quality of the substance that is analyzed. And the word prima facie merely means that the certificate is evidence in this case and may be considered by you together with all the other evidence in the case when you are deciding whether the substance was in fact cocaine. If you accept the evidence, then you are permitted, but not required, to conclude that the substance was cocaine. It’s entirely up to you to decide. Bear in mind the Commonwealth must prove
 
 beyond a reasonable doubt
 
 that the substance was in fact cocaine.
 

 The third element the Commonwealth must prove
 
 beyond a reasonable doubt
 
 is that the defendant possessed a controlled substance knowingly or intentionally. As to the knowledge requirement, the Commonwealth must prove
 
 beyond a reasonable doubt
 
 that the defendant knew the substance in his possession was a controlled substance, to wit, cocaine. However, the Commonwealth does not have to prove that the defendant knew the exact nature of the substance. It is sufficient if the Commonwealth proves
 
 beyond a reasonable doubt
 
 that the defendant was aware that he possessed some type of controlled substance, not necessarily cocaine. The Commonwealth must also prove
 
 beyond a reasonable doubt
 
 that the defendant had consciously, voluntarily, and purposely possessed the controlled substance. And a person’s knowledge, like his intent, is a matter of proof which may not be susceptible to proof by direct evidence. And if, in fact, it is not susceptible to proof by direct evidence, then this jury may then resort to proof by circumstantial evidence and the inferences reasonably drawn from the evidence that this jury has heard during the course of this trial.
 

 The fourth element the Commonwealth must prove
 
 beyond a reasonable
 
 
 *155
 

 doubt
 
 is that the defendant had a specific intent to distribute the controlled substance in his possession. Intent, again, refers to a person’s objective or a person’s purpose. And the law recognizes two kinds of intent — general intent and specific intent. In this case, the Commonwealth must prove specific intent as opposed to general intent. General intent is when we do things more or less unconsciously; it is a reflex action, such as sitting down in a chair, or walking up a flight of stairs. We wouldn’t take those actions unless our minds resolved to do them, but they don’t require any concentration or focusing of the mind. Specific intent requires a conscious decision. It involves concentration or focusing of the mind before the desired act is committed. In other words, an act performed with specific intent is a conscious one done with the determination of the mind to act. In this case, the Commonwealth must prove the defendant had the specific intent to distribute the controlled substance. And the word distribute includes all forms of physical transfer. It is unlawful for a person to even make a gift of a controlled substance. To distribute means what the word commonly means. It means to make available, to give away, or to transfer ownership from one person to another. The Commonwealth does not have to prove an actual sale, but it must prove that the defendant specifically had it in his mind that he was going to distribute; to transfer ownership of this controlled substance to another person. Bear in mind, however, as to this element, the Commonwealth must prove that the defendant did not possess the controlled substance solely for his own use or for his own consumption. Here again, a person’s intent or state of mind is a matter of fact that may not be susceptible to proof by direct evidence, and resort may be had to inferences reasonably drawn from the facts and circumstances of the case. An inference of an intent to distribute may be drawn from such evidence as the possession of large quantities of drugs, the amount of which would not be consistent with personal use, and the way in which the drugs are packaged. You must determine whether such an inference is reasonable in this case.
 

 The fifth element the Commonwealth must prove
 
 beyond a reasonable doubt
 
 is that the amount of the cocaine was twenty-eight grams or more. In making this determination, it’s the weight of the whole mixture and not just the weight of the cocaine in pure form that you must consider.
 

 In order to prove the defendant guilty of trafficking, the Commonwealth must prove
 
 beyond a reasonable doubt
 
 the following five elements. First, that the defendant possessed — and I’ve explained to you what possessed means. Second, a controlled substance — and I’ve instructed you on a controlled substance. Third, that the defendant possessed that controlled substance knowingly and intentionally. Fourth, that the defendant had the specific intent to distribute. And fifth, the weight of the cocaine was twenty-eight grams or more. If the Commonwealth has proven each and every element
 
 beyond a reasonable daubt,
 
 then you will find the defendant guilty of trafficking in cocaine. If the Commonwealth has failed to prove each and every element of this offense
 
 beyond a reasonable doubt,
 
 then you will find this defendant not guilty, (emphasis added).
 

 The judge further instructed the jury as follows:
 

 You will have with you in the jury room, Mr. Foreman, verdict slips. There will be two sets, one for each indictment. On Indictment 31891, that involves that case at the Dartmouth Mall; and let me read it for you because it’ll be in your custody and control, Mr. Foreman, so the others will understand how it reads out. It gives the caption of the case in the traditional way, and then below the caption it says verdict—
 
 *156
 
 guilty — trafficking Class B — two hundred grams or more — and a place to check off. If you find the defendant has trafficked in cocaine, a Class B substance, of two hundred grams or more, then by checking off the verdict of guilty on that line, you will have found this defendant guilty of trafficking in Class B, which is cocaine, of two hundred grams or more. And the second fine, it says verdict — guilty—trafficking Class B — one hundred grams or more but less than two hundred grams. That’s a.second option that you have. And the third option is verdict — guilty—trafficking Class B — twenty-eight grams or more but less than one hundred.
 

 So, there are three options open to you insofar as the trafficking charge is concerned. In addition, of course, there’s a fourth line that says verdict— not guilty. If you find that this defendant is not guilty, then of course you would check off that line, and by doing so you’ll have found this defendant not guilty. And there’s a place for your signature, Mr. Foreman, and a place to date it. On the back of it, again, there’s a copy of the indictment that makes reference to Dartmouth, so you can identify which case each slip addresses. The second slip is identical, it’s the same indictment for a different location, a different time, and refers to New Bedford, and it goes in the same sequence; you may find the defendant guilty of trafficking in Class B, two hundred grams or more; trafficking in Class B, one hundred grams or more but less than two hundred grams; trafficking in Class B, twenty-eight grams or more but less than a hundred; and a verdict of not guilty.
 

 I think it’s clear to you, but let me instruct you on it anyway — and I don’t mean to demean you in any way — but you’d only check off one line. To check off two would be obviously an inconsistent verdict. So, after you review all the evidence, it’s up to the jury to decide what, if any, offense this defendant is guilty of — and if he is not guilty of any of these offenses, then of course, you would check off the verdict of not guilty. May I see counsel, please?
 

 Following this instruction, the prosecutor stated:
 

 PROSECUTOR: Your Honor, I’m concerned about the weight of the two hundred grams. In your main instruction on trafficking, you defined the trafficking as at least twenty-eight grams. But to find the defendant guilty of the indictments as charged in this particular case, you must find at least proof of two hundred grams. If you find that the Commonwealth has not proven two hundred grams, then you can find the defendant guilty of the one hundred grams or the twenty-eight grams. But I would not want to see him convicted thinking they only need twenty-eight grams. In terms of the indictment as drafted, we would need to prove two hundred grams.
 

 THE COURT:
 
 I think the verdict slips spell it out.
 
 I went through the verdict slips and I think that spells it out — they give him the three options, (emphasis added).
 

 PROSECUTOR: Okay, that’s fine.
 

 IV.
 
 STATE APPEAL
 

 Petitioner, as he does now, challenged these instructions in the Massachusetts Appeals Court. Petitioner asserts that the instructions on the “fifth element” of the crime of trafficking were erroneous, and must result in “either a reversal of convictions or a reduction to a lesser included offense.” Specifically, Petitioner argues that the failure of the trial judge to reiterate the “beyond-a-reasonable-doubt” instruction for each of the three weight categories on the verdict form constitutes a structurally erroneous “beyond-a-reasonable-doubt” instruction requiring per se reversal.
 
 See Sullivan v. Louisiana,
 
 508 U.S. 275, 282, 113 S.Ct. 2078, 2083, 124 L.Ed.2d 182 (1993).
 

 
 *157
 
 The following is the complete opinion issued by the Massachusetts Appeals Court in affirming the convictions:
 

 On appeal from his convictions of trafficking in 200 grams or more of cocaine, the defendant argues that his convictions must be reversed because the judge failed to instruct the jury that they had to find beyond a reasonable doubt that the quantity of cocaine he intended to distribute was in fact 200 grams or more. We affirm the judgments.
 

 In his instructions to the jury, the judge informed the jury that in order to convict the defendant, the Commonwealth had to prove beyond a reasonable doubt that the amount of cocaine possessed by the defendant was twenty-eight grams or more. Although the prosecutor objected to the failure of the judge to instruct the jury that they had to find beyond a reasonable doubt that the defendant possessed 200 grams or more, the judge failed to so instruct the jury on the grounds that his explanation of the verdict slip in which the trafficking was broken down into the three weight categories of more than 200 grams, 100 grams, and twenty-eight grams sufficed. The defendant did not join the prosecutor in his objection to this omission.
 

 While we conclude it was error for the judge to fail to instruct the jury as the prosecutor had requested,
 
 Commonwealth v. Martinez,
 
 37 Mass.App.Ct. 948, 951, 641 N.E.2d 1360 (1994), we decide that, regardless if the standard of review is one of substantial risk of miscarriage of justice based on the failure of the defendant to object, or harmless error beyond a reasonable doubt,
 
 see Commonwealth v. Skinner,
 
 408 Mass. 88, 96-98 & n. 5, 556 N.E.2d 1014 (1990), there is no way that the jury would have reached a different conclusion if it had not been given the erroneous charge. During the trial, neither the weight of the evidence of the cocaine was disputed by the defendant, nor the evidence that the amount of cocaine distributed or found in the defendant’s apartment exceeded 200 grams was contradicted. We can, therefore, say beyond a reasonable doubt that the result would have been the same even if the judge had not committed error and does not require a per se reversal.
 
 Commonwealth v. Rey-noso,
 
 692 N.E.2d 120 (Mass.App.Ct. March 3, 1998) (unpublished opinion).
 

 V.
 
 STANDARD OF REVIEW FOR HA-BEAS CORPUS
 

 The Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), 110 Stat. 1214, was enacted on April 24, 1996, and amended 28 U.S.C. § 2254 to change the standard by which federal courts review the habeas petition of a person in custody pursuant to the judgment of a state court. Under 28 U.S.C. § 2254, a state court conviction may be reviewed by a federal court only if state court adjudications resulted in decisions “contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,” 28 U.S.C. § 2254 (1998). Specifically, Section 2254(d) provides:
 

 An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim ... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.
 

 The United States Court of Appeals for the First Circuit has set forth a two-step analysis for examining claims for habeas relief under this statute.
 
 See O’Brien v. Dubois,
 
 145 F.3d 16 (1st Cir.1998). The first step requires the federal court to inquire “whether the Supreme Court has prescribed a rule that governs the petition
 
 *158
 
 er’s claim.”
 
 See id.
 
 at 24. This first step is triggered only if the Supreme Court rule “can be fairly said to require a particular result in a particular case.”
 
 See id.
 
 at 25. If the Supreme Court has prescribed such a rule, then the federal court must determine whether the state court’s decision is “contrary to” the governing rule.
 
 See id.
 
 at 24. Under this first inquiry, the “habeas petitioner must show that Supreme Court precedent requires an outcome contrary to that reached by the relevant state court.”
 
 See id.
 
 at 24-25. A petitioner may succeed under the “contrary to” clause only if “Supreme Court case law directly governs the claim and the state court got it wrong.”
 
 See Vieux v. Pepe,
 
 184 F.3d 59, 63 (1st Cir.1999).
 

 The second step of habeas review applies when there is no clear rule requiring a specific outcome which governs petitioner’s claim. In such cases, the federal court must determine whether the state court’s use of (or failure to- use) existing law in deciding the petitioner’s claim involved an “unreasonable application of Supreme Court precedent.”
 
 See O’Brien,
 
 145 F.3d at 25. A decision is to be deemed unreasonable only when it is “so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes.”
 
 See id.
 

 VI.
 
 DISCUSSION
 

 A.
 
 Procedural Default
 

 The government contends that petitioner’s claim is procedurally defaulted because of his failure to object to the erroneoüs instructions at the time of trial. Habeas review of petitioner’s claim, however, is appropriate. When a state court decides the case on the merits, then the claim may properly be presented as a petition for habeas corpus to a United States District Court.
 
 See Victor v. Nebraska,
 
 511 U.S. at 19, 114 S.Ct. at 1249. Procedural default does not bar consideration of a federal claim on habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.
 
 See Harris v. Reed,
 
 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989). In this case, the Massachusetts Appeals Court clearly affirmed petitioner’s conviction based on the merits of his claim, and did not clearly and expressly rely on his failure to object at trial. In any case, the instructions
 
 were
 
 objected to at trial. The fact that the prosecutor, and not the defendant, objected to the instructions does not preclude habeas review. The trial court had already overruled one objection to the instructions; the defendant is not required to object again. Petitioner’s claim is not barred due to procedural default. ■
 

 B.
 
 Erroneous ‘Beyond-A-Reasonable-Doubt” Instructions
 

 The sole issue before this Court, therefore, “is whether the decision of the Massachusetts Appeals Court was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.”
 
 See
 
 28 U.S.C. § 2254 (1998). In other words, the issue is whether the Massachusetts Appeals Court violated Supreme Court law when it held that the jury instructions constituted “harmless” error.
 

 The Supreme Court has recognized that not all errors committed in the course of a trial require reversal.
 
 See Chapman v. California,
 
 386 U.S. 18, 21-22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). Certain constitutional errors may be “harmless” in terms of their effect on the fact-finding process at trial.
 
 See Sullivan,
 
 508 U.S. at 279, 113 S.Ct. at 2081. In fact, most constitutional errors
 
 are
 
 amenable to harmless-error analysis.
 
 Id.
 

 The Supreme Court, however, has also recognized that some errors constitute “structural” errors in the constitution of the trial mechanism, and defy harmless-error analysis.
 
 See Arizona v. Fulmi-
 
 
 *159
 

 nante,
 
 499 U.S. 279, 309-10, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991). Such structural errors will “always invalidate the conviction.”
 
 See Sullivan,
 
 508 U.S. at 279, 113 S.Ct. at 2081. The Supreme Court has held that an erroneous “beyond-a-reasonable-doubt” instruction is one such “structural” error.
 
 See Sullivan,
 
 508 U.S. at 281-82, 113 S.Ct. at 2083. In
 
 Sullivan,
 
 the Supreme Court held that jury instructions which define “reasonable doubt” to require “grave uncertainty,” “substantial doubt,” and “moral certainty” are unconstitutional.
 
 See id.; see also Cage v. Louisiana,
 
 498 U.S. 39, 41, 111 S.Ct. 328, 329-30, 112 L.Ed.2d 339 (1990) (overruled on other grounds).
 

 The Supreme Court held that the essential connection to a beyond-a-reasonable-doubt factual finding cannot be made where “the instructional error consists of a mis-description of the burden of proof, which vitiates all the jury’s findings.”
 
 See Sullivan,
 
 508 U.S. at 281, 113 S.Ct. at 2082. The Supreme Court reasoned that harmless-error review can not apply in such a situation because harmless-error review looks to the basis on which the jury actually rested its verdict.
 
 See Sullivan,
 
 508 U.S. at 279, 113 S.Ct. at 2081. A harmless-error inquiry instructs a reviewing court to consider
 
 not
 
 “what effect the constitutional error might generally be expected to have upon a reasonable jury,” but rather, “what effect it had upon the guilty verdict.”
 
 Id.
 

 The “harmless-error” inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict surely would have been rendered — but whether the guilty verdict actually rendered was surely unattributable to the error.
 
 Id.
 
 The Supreme Court reasoned that “the most an appellate court can conclude is that a jury would surely have found petitioner guilty-beyond-a-reason
 
 able-doubt
 
 — not that the jury’s actual finding of guilty-beyond-a-reasonable-doubt would surely not have been different absent the constitutional error.”
 
 See Sullivan,
 
 508 U.S. at 280, 113 S.Ct. at 2082. The Supreme Court held, therefore, that the Sixth Amendment requires “more than appellate speculation about a hypothetical jury’s action” in cases where the jury has received a mis-description of the burden of proof.
 
 Id.
 

 Petitioner argues that the “harmless-error” analysis of the Massachusetts Appeals Court is exactly the type of appellate speculation frowned upon by the United States Supreme Court in
 
 Sullivan.
 
 Petitioner argues that the Massachusetts Appeals Court acted contrary to or unreasonably applied the holding of
 
 Sullivan.
 
 Petitioner argues that the Massachusetts Appeals Court, having found that the “beyond-a-reasonable-doubt” instructions were erroneous, was prevented from engaging in a “harmless-error” analysis, and was required by
 
 Sullivan
 
 to reverse the conviction.
 

 The decision of the Massachusetts Appeals Court, however, was neither contrary to, nor an unreasonable application of Supreme Court law.
 
 Sullivan
 
 holds only that “beyond -a-reasonable-doubt” instructions which
 
 mis-describe
 
 the burden of proof require per se reversal.
 
 See Sullivan,
 
 508 U.S. at 281, 113 S.Ct. at 2082. That is not the case here.
 

 The universe of cases dealing with
 
 Sullivan
 
 error are limited to (1) instructions which misdefine reasonable doubt such as requiring a finding of guilt to a level of “moral certainty,” “grave uncertainty,” or “substantial doubt,” (2) instructions which improperly shift the overall burden of proof of guilt-beyond-a-reasonable-doubt to the defendant, and (3) instructions which remove an element of the crime from the jury’s consideration.
 
 See, e.g., Koonce v. Pepe,
 
 99 F.3d 469, 476 n. 4 (1st Cir.1996) (court recognized that instructions which relieve the Commonwealth of its duty to prove each element of a crime may be structural error);
 
 United States v. DiRico,
 
 78 F.3d 732, 737-38 (1st Cir.1996) (instructions which withdraw the issue of
 
 *160
 
 “materiality” from the jury constitute a structural error);
 
 United States v. Colon-Pagan,
 
 1 F.3d 80, 81-82 (1993) (instructions which define reasonable doubt to mean “proof of such a convincing character that a person ... would be willing to rely and act upon it” constituted structural error);
 
 Simpson v. Matesanz,
 
 29 F.Supp.2d 11, 21 (D.Mass.1998) (reversed on other grounds) (instructions which define reasonable doubt to require a finding of guilt to a level of “moral certainty” may constitute structural error);
 
 Columna v. DuBois,
 
 1996 WL 590736, *4 (D.Mass.1996) (same);
 
 Gilday v. Callahan,
 
 866 F.Supp. 611, 616-18 (D.Mass.1994) (same).
 
 [2]
 

 In determining-whether the erroneous instructions fall into the class of instructions prohibited by
 
 Sullivan,
 
 this Court must examine the charge in context, taken as a whole, to determine whether the instructions correctly convey the concept of reasonable doubt on each element of the crime.
 
 See Victor,
 
 511 U.S. at 5, 114 S.Ct. at 1243. Petitioner does not assert that the definition of “reasonable doubt”
 
 itself
 
 is incorrect. Nor does petitioner assert that the government improperly shifted the burden of proof to the defendant. Petitioner does not assert that the trial judge improperly removed an element of the crime from the jury’s consideration. Instead, petitioner asserts that the
 
 failure to charge
 
 reasonable doubt for each of the three weight categories of cocaine constitutes a structural error and violates the holding of
 
 Sullivan.
 

 The trial judge in this case, however, properly informed the jury, on numerous occasions, that they were required to find each of the five elements of the crime beyond a reasonable doubt. The trial judge specifically instructed the jury that, “the fifth element the Commonwealth must prove
 
 beyond a reasonable doubt
 
 is that the amount of the cocaine was twenty-eight grams or more.” The verdict form explicitly set forth the three possible weight categories: (1) more than 200 grams, (2) more than 100 grams but less than 200 grams, and (3) more than twenty-eight grams but less than 100 grams. Furthermore, the jury instructions, including the explanation of the verdict slip, included clear instructions that the jury could find the petitioner guilty on
 
 only one of three weight categories.
 
 The only error here was the failure to reiterate the charge of “beyond-a-reasonable-doubt” on each of the three possible weight categories when explaining the verdict form.
 

 The definition of reasonable doubt was proper. The judge instructed the jury as to reasonable doubt on each of the five elements of the crime. The instructions did not improperly shift the burden of proof. Nor did the instructions remove an element of the crime from the jury’s consideration. Even if an entire element
 
 had
 
 been omitted, which is not the case here, that would not be enough. Instructions which merely omit an element of a crime are
 
 not
 
 proscribed by
 
 Sullivan,
 
 and
 
 are
 
 subject to harmless-error review.
 
 See Neder v. United States,
 
 527 U.S. 1, 119 S.Ct. 1827, 1837, 144 L.Ed.2d 35 (1999).
 

 The trial judge
 
 did
 
 give a “reasonable-doubt” instruction on
 
 each
 
 of the five elements, including weight. The “reasonable- . doubt” instruction on the fifth element of drug trafficking was amplified by the verdict form and the judge’s clear instructions regarding the verdict form. At
 
 most,
 
 the error here is the mere failure to apply a “reasonable doubt” instruction to each cocaine weight category. Such error is not in the class proscribed by
 
 Sullivan:
 
 a mis-description of the burden of proof which has vitiated the jury’s findings.
 

 
 *161
 
 As such, the decision of the Massachusetts Appeals Court was not contrary to clearly established federal law, as. determined by the Supreme Court of the United States. Nor was it an unreasonable application of
 
 Sullivan.
 
 Given the fact that
 
 Sullivan
 
 has been applied to a narrow class of erroneous “reasonable doubt” instructions, the decision of the Massachusetts Appeals Court was not “so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes.”
 
 See O’Brien,
 
 145 F.3d at 25.
 

 V.
 
 CONCLUSION
 

 For these reasons, the Petition for Writ of Habeas Corpus is denied.
 

 SO ORDERED.
 

 [1]
 

 . Petitioner was charged with drug trafficking of a Class B substance. The fifth element that the prosecution was required to prove beyond a reasonable doubt was that the amount of drugs was twenty-eight (28) grams or more. The jury instructions and the verdict form allowed the jury to convict the petitioner on one of the following three drug weight categories: (1) more than two hundred (200) grams, (2) more than one hundred (100) but less than two hundred (200) grams, or (3) more than twenty-eight (28) but less than one hundred (100) grams.
 

 [2]
 

 . This Court has not found any similarly situated case, positive or negative, which applies the
 
 Sullivan
 
 analysis. Furthermore, the Supreme Court has subsequently held that category three (3) instructions — those which omit an element of the
 
 crime
 
 — are subject to harmless-error review.
 
 See Neder v. United States,
 
 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).