## Commonwealth *vs.* Christopher Daley.

No. 00-P-163.

Middlesex. June 28, 2001. - June 7, 2002.

Present: Duffly, Kantrowitz, & McHugh, JJ.

Further appellate review granted, 437 Mass. 1106 (2002).

*Indecent Assault and Battery. Practice, Criminal,* Conduct of prosecutor, Cross-examination by prosecutor, Argument by prosecutor.

At a criminal trial, the prosecutor's misstatement of the evidence and inappropriate characterization of the defendant, when considered in light of numerous other prosecutorial missteps and the absence of adequate curative instructions, required reversal of the defendant's conviction of indecent assault and battery on a person fourteen or older. [89-94] Kantrowitz, J., dissenting.

Complaint received and sworn to in the Cambridge Division of the District Court Department on October 13, 1998.

The case was tried before *Janet L. Sanders*, J.

*Jennifer H. O'Brien* for the defendant.

*Kevin J. Curtin*, Assistant District Attorney (*Allison O'Neil*, Assistant District Attorney, with him) for the Commonwealth.

Duffly, J. Convicted by a District Court jury of indecent assault and battery on a person fourteen or older, the defendant appeals, claiming prosecutorial misconduct, the improper admission of hearsay, and ineffective assistance of counsel. "We have often warned that we will not tolerate prosecutorial misconduct during trial." *Commonwealth* v. *Smith*, 387 Mass. 900, 903 (1983). Because the prosecutor's argument went too far, too often, and the judge's instructions did not go far enough, we are constrained to reverse.

This was a two-witness case. The complaining witness testified that as she was leaving her apartment in Cambridge on the evening of the incident, the defendant grabbed her, gripped her face in his hands and put his lips over hers. He attempted to

stick his tongue into her mouth, but she clenched her teeth.[1] She said that earlier in the day she had given the defendant a cigarette and later had exchanged pleasantries with him. The defendant, taking the stand in his own defense, testified that he and the complainant had had friendly conversation twice that day and that the contact between them was consensual. According to the defendant, when he approached the complainant while he was panhandling for money, he told her it was his birthday, and she responded by giving him a hug.

This case turns on prosecutorial misconduct. The issue is whether the prosecutor's persistent presentation of the defendant as a "crack" cocaine-dealing, drug- and alcohol-abusing thief, coupled with the prosecutor's invitation to the jury to consider the defendant's character and the prosecutor's complete disregard of the judge's explicit order to refrain from argument about the defendant's supposed guilty conscience, pushed the jury in a direction that proper argument would not have taken them. Credibility could not have been more central to the outcome. See *Commonwealth* v. *Kozec*, 399 Mass. 514, 520 (1987) ("The basic issue at trial was the credibility of the victim and the defendant").

*Discussion.* The defendant contends that the prosecutor improperly used the defendant's prior conviction for distributing cocaine to attack his character through repeated statements during her cross-examination of the defendant — couched as questions to which the prosecutor sought an affirmative response — that he was a "crack dealer," and by arguing during summation that the jury consider the defendant's character in connection with the fact that "[h]e's a crack dealer" and "a thief." The defendant also contends that during closing argument the prosecutor misstated evidence when she twice described the defendant as having admitted he had stolen a knife. Finally, he argues that the prosecutor impermissibly adverted to evidence of his consciousness of guilt, although she had been ordered by the judge not to do so (the prosecutor having failed to respond to discovery requests regarding this issue).

When a defendant raises a claim of prosecutorial misconduct,

---

[1]The defendant makes no claim on appeal that these facts do not support his conviction of indecent assault and battery pursuant to G. L. c. 265, § 13H.

"we consider (1) whether the defendant seasonably objected; (2) whether the error was limited to collateral issues or went to the heart of the case; (3) what specific or general instructions the judge gave the jury which may have mitigated the mistake; and (4) whether the error, in the circumstances, possibly made a difference in the jury's conclusions." *Commonwealth* v. *Kater*, 432 Mass. 404, 422-423 (2000). The defendant's only objection was lodged in connection with the prosecutor's closing argument characterizations of the defendant as a thief and his purported admissions to having stolen the knife. We begin by reviewing the preserved claims for prejudicial error.[2] See *Commonwealth* v. *Santiago*, 425 Mass. 491, 500 (1997).

The prosecutor misstated the evidence. Contrary to the prosecutor's assertions ("He told you he stole it. Those were his own words; I stole it. I was grabbing food and I stole the knife"), the defendant did not say he had stolen a knife and the evidence does not justify such an inference. See *Commonwealth* v. *Kelly*, 417 Mass. 266, 270 (1994). The sole reference to a knife came during direct examination of the defendant. He testified that following the incident, at about 7:00 P.M., he returned to a Salvation Army shelter too late to get a bed for the evening. He attempted to get something to eat but was told he had to leave the shelter. A police officer came in and told him to sit on the floor, next to a soda machine. The officer found a knife on the defendant's person. The defendant testified, "I must have — you know, at that point I had like a serrated knife, cause I grab a knife and fork and tried to get me something to eat when I went in there, while they was telling me to get out." This was not evidence from which it could reasonably be inferred that the knife in the defendant's possession at the time he was detained

---

[2]The transcript of the sidebar conference during which defense counsel made her objection is riddled with "inaudibles." For the future, it would be beneficial if counsel would review the tapes and transcripts prior to inclusion in the record on appeal to correct the transcription or determine what words were spoken that the transcriber or stenographer deemed "inaudible." Here, it is clear from the context, including the judge's responses, that defense counsel alerted the judge to both the issue of misstated evidence regarding theft of a knife and to the characterization of her client as a thief. "Defense counsel sufficiently apprised the judge of the grounds on which [s]he objected to the prosecutor's closing argument . . . ." *Commonwealth* v. *Awad*, 47 Mass. App. Ct. 139, 143 n.2 (1999).

and (apparently) searched had been stolen by him, and there was no other evidence from which this inference could have been drawn.

Even if there had been evidence that the defendant was a thief, the use made of such evidence in the prosecutor's closing would still have been improper. "It is well settled that the prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purposes of showing his bad character or propensity to commit the crime charged . . . ." *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986).

The prosecutor impermissibly told the jury that they could consider the defendant's character when drawing their conclusions as to his guilt. She said:

> "Now, I want you to take in consideration of defendant's character. He's a crack dealer. He was dealing crack cocaine in 1998. That's the year of this incident, 1998. He was convicted of dealing crack cocaine. Now, [defense counsel] says that happened a couple of years ago, no, 1998 he was convicted of dealing crack cocaine. Take that into consideration when you're assessing his testimony on the stand. He was drinking. He told you that. He did crack that day. Take that into consideration. He also stole a knife that day. So, he admitted to you on the stand that he stole a knife. He's a thief now, too."

We do not agree with the Commonwealth's argument that the prosecutor's reference to character was inadvertent and that the intended use of the word "credibility" is clear in context. Not only did the prosecutor plainly direct the jury "to take in consideration of defendant's character," but the thrust of the prosecutor's argument was that the jury consider the defendant's character as a dealer of cocaine, as a drug and alcohol user, and as a thief, and was improper. See *Commonwealth* v. *Kozec*, 399 Mass. at 525. The prosecutor made no mention here of the defendant's prior conviction as a basis for assessing credibility.

Proceeding from her erroneous remarks regarding the defendant's character as a crack cocaine dealer and user, and a thief, the prosecutor then invited the jury to consider the defendant's alcohol drinking and drug taking upon his "ability

to perceive," and the fact "that's he's on probation," in light of his "motive when [he was] testifying." We take note of the prosecutor's persistent use of prejudicial labels when referring to the defendant. Repeated references to the defendant as a "crack dealer," drug and alcohol user, thief and probationer were made for their "emotional impact," serving primarily "to make it less likely that the jury [would] return a verdict based on fair, calm consideration of the evidence." *Commonwealth* v. *Shelley*, 374 Mass. 466, 470 (1978).

Finally, the prosecutor made closing statements adverting to the complainant's comments that she observed the defendant "crouching" in a manner suggesting that the defendant did so because he had something to hide. The judge had ordered the prosecutor to refrain from making such argument, and the argument should not have been made. See *Commonwealth* v. *Montecalvo*, 367 Mass. 46, 56-57 (1975) (judge must intervene where argument is improper, especially where "judge has previously excluded the particular argument as improper"). Further, the evidence that formed the basis for the inference of consciousness of guilt was thin[3] and the jury were given no instruction on the subject.[4] See, e.g., *Commonwealth* v *Person*, 400 Mass. 136, 142 (1987) (reversal required where prosecutor asked jury to

---

[3]See, e.g., *Commonwealth* v. *Carita*, 356 Mass. 132, 140 (1969) ("we do not view absences from places not shown to be locations where an individual may customarily resort as properly admissible in evidence. The cumulative effect of such evidence to support consciousness of guilt is capable of an effect as injurious as it is invalid"); *Commonwealth* v. *Brousseau*, 421 Mass. 647, 652 (1996) (discretion to instruct exists when consciousness of guilt evidence is supported by other evidence); *Commonwealth* v. *Robles*, 423 Mass. 62, 71 (1996) (statements may be considered as consciousness of guilt if there is other evidence tending to prove falsity of statements); *Commonwealth* v. *Haraldstad*, 16 Mass. App. Ct. 565, 570 (1983) (error to instruct jury on consciousness of guilt based on facts without reasonable record support); *Commonwealth* v. *Kane*, 19 Mass. App. Ct. 129, 137 n.6 (1984) (weak evidence of consciousness of guilt should be excluded or jury charged against making inference).

[4]The jury were thus not informed "that they are not to convict a defendant on the basis of evidence of flight or concealment alone . . . , and [] that they may, but need not, consider such evidence as one of the factors tending to prove the guilt of the defendant," *Commonwealth* v. *Toney*, 385 Mass. 575, 585 (1982), nor cautioned "that since there are numerous reasons why an innocent person might flee [or hide], flight or similar conduct does not necessarily reflect feelings of guilt . . . [and] that, even where a person's flight [or

draw consciousness of guilt inference not fairly warranted from evidence).

The Commonwealth's argument, that the prosecutor touched only tangentially on the inference of a guilty conscience and that the jury had heard testimony of crouching from the defendant as well as from the complainant,[5] misses the point. The judge had specifically ordered the prosecutor not to argue that this evidence exhibited consciousness of guilt because the Commonwealth had, in response to a discovery request, stated it was unaware of any evidence of consciousness of guilt, but then had proceeded to elicit the testimony regarding "crouching" or "hiding." Implicit in the judge's order was the determination that such argument would be unfairly prejudicial to the defendant in the circumstances. Notwithstanding the order, the prosecutor made this final statement in her closing: "The last and final thing that is a concern about the defendant's story is the fact that he was crouched. Crouched down at a Coke machine. If this was a hug, as he suggested, why was he crouched down?" The statement signified that the defendant was hiding and that he did so because he had a guilty conscience. Although the judge immediately admonished the prosecutor to "move on," it came too late to prevent the improper suggestion being conveyed to the jury. See *Commonwealth* v. *Estrada*, 25 Mass. App. Ct. 907, 908 (1987) (where outcome of trial turns on credibility, court cannot overestimate effect on jury of argument tending to show consciousness of guilt on the part of the defendant).

Nor was the impact of the prosecutor's improper final argument mitigated by the judge's instruction to the jury, issued at the conclusion of the argument, that referred only to the

other conduct] does demonstrate feelings of guilt, it does not necessarily mean that the person is in fact guilty, because feelings of guilt are sometimes present in innocent people." *Id* at 585 n.6.

[5]The complainant testified that, after the incident, she accompanied two police officers to the shelter where one, standing near an open door, called her over to where he was standing and asked, "[I]s this the man?" She recognized the defendant, who was "crouched in the corner" beside a soda machine. Pressed by the prosecutor to elaborate, the complainant opined that the defendant was "almost sitting on the floor . . . like, in a hiding position." The defendant testified that he had been told to sit next to the soda machine by police.

improper use of the defendant's cocaine conviction. The judge began by stating that "there is *one* thing I want to correct about [the prosecutor's] argument" (emphasis supplied). The ensuing instruction made no mention of the prosecutor's misstatements regarding the knife,[6] nor the impermissible suggestion that guilt might be based on his character as a thief, nor the prosecutor's improper allusion to the supposed evidence of the defendant's guilty conscience. By focusing only on the cocaine conviction, the curative instruction may have appeared to endorse the rest of the prosecutor's argument. Cf. *Commonwealth* v. *Kozec*, 399 Mass. at 522. We are not persuaded that the general instruction informing the jury to consider only evidence introduced at trial, and that argument was not evidence,[7] was sufficient to overcome the prosecutor's misconduct — misconduct sufficient to defeat even a strong case for the Commonwealth. The prosecutor's misstatement of the evidence and inappropriate characterization of the defendant as a thief were errors objected to by the defendant, and when considered in light of numerous other prosecutorial missteps and the absence of adequate curative instructions, require reversal.[8,9]

*Judgment reversed.*

Kantrowitz, J. (dissenting). The jury did not learn from the

[6]Indeed, without the benefit of a trial transcript and the leisure to review it, the judge did not accurately recall the evidence, stating she "thought he said he took a knife out of McDonald's . . . ."

[7]The judge apparently took her instructions from the Model Jury Instructions for Use of the District Court (1997), when she stated in her general charge on credibility: "You may consider a witness's character, his appearance and demeanor on the witness stand . . . ." See *id.* at § 2.07. This instruction derives from *Commonwealth* v. *Coleman*, 390 Mass. 797, 802 (1984). But the principle of *Coleman* is that a fact finder may consider the character of a witness's *testimony* in determining credibility. The given instruction could not have helped to dissuade the jury from considering the defendant's character in this case.

[8]We inquire to assess the prejudicial impact of the prosecutor's charge, *Commonwealth* v. *Borodine*, 371 Mass. 1, 11 (1976), cert. denied, 429 U.S. 1049 (1977), "[l]ooking at the cumulative effect of the prosecutorial errors during the trial and the closing argument." *Commonwealth* v. *Smith*, 387 Mass. 900, 912 (1983).

[9]The defendant also claims that it was error to allow in evidence statements

prosecutor that the defendant was a "crack-dealing, drug and alcohol abus[er]" who was currently on probation. This knowledge was gained from the defendant's own testimony on direct examination. The jury were told how to assess this evidence, as well as all of the other evidence, by a judge who provided thorough, and when needed, immediate curative instructions, which the jury presumably followed.

*Actions by the judge prior to testimony being taken.* The judge thoughtfully ruled on a motion in limine to disallow the Commonwealth from introducing prior convictions of armed robbery, assault and battery by means of a dangerous weapon, and assault and battery on a police officer. She also allowed partial individual voir dire.[1] Further, she asked additional questions of the venire to ensure the jury was impartial. Once the jury were selected, she instructed them, among other things, at the outset, prior to any evidence being presented, about the presumption of innocence and the burden of the Commonwealth to prove the case beyond a reasonable doubt. She pointedly told them the opening statements and closing arguments were not evidence.

*The strength of the case.* Identification was not an issue. The victim, who stood four feet, eleven inches tall, came into contact with the defendant, whom she had never seen before, on three occasions on the day of the incident. In the late morning, while

made by a passerby, who stopped during the incident and asked "Hey, are you all right?" According to the testimony of the complainant, the defendant fled after the pedestrian asked the question. Defense counsel's objection to the testimony was overruled. We do not decide this issue because the evidence at any retrial would not necessarily be the same as that presented at trial. We note only that to the extent the testimony was relevant to and focused on the defendant's sudden departure from the scene, it was not hearsay. See Liacos, Massachusetts Evidence, § 8.2 (7th ed. 1999). By contrast, to the extent the testimony was introduced as an assertion that the complainant was not in fact "all right," it would likely fall within the hearsay rule. Cf. *Commonwealth* v. *Ashman*, 430 Mass. 736, 742 (2000). Compare *United States* v. *Long*, 905 F.2d 1572, 1579-1580 (D.C. Cir.), cert. denied, 498 U.S. 948 (1990).

We do not address Daley's claim that he received ineffective assistance of counsel because the omissions complained of are unlikely to recur in the event of retrial. See, e.g., *Commonwealth* v. *Patry*, 48 Mass. App. Ct. 470, 476 (2000).

[1]Among the areas explored individually was the ability of the potential juror to assess the credibility of the witnesses, including that of the defendant.

Commonwealth *v.* Daley.

the victim was sitting on a park bench, talking with a male friend and enjoying the fall weather, the defendant approached, asking for a cigarette. After the victim gave him one, he left, only to remain in the area. She thought him "a little strange." She next saw him a few hours later while walking her dog. The defendant approached her and they engaged in some small talk. While the victim did not wish to do so, being cordial, she did.

At 7:00 P.M. when she was walking to a restaurant to retrieve a take-out order for her daughter, "[a] person came up to me and grabbed me like this, very tightly." Her face was gripped so tightly that "I had cuts inside my mouth from my teeth." The defendant shoved her toward a bench, and "he was trying to stick his tongue in my mouth, and I kept my teeth shut." The victim described the incident as "so traumatizing . . . I was in — so much fear, I didn't know what was going to happen." They struggled, the defendant's hand over her face, he still trying to enter her mouth. He told her he had a "piece," which the victim took to mean "a gun or a weapon." Upon hearing that, she started kicking vigorously. Finally, a couple happened by, the male asking if she was all right. The defendant immediately fled "very quickly." The victim continued, "I got up, I thanked the couple, because I was so grateful. I wish I got their names. And I ran into my apartment and I called 911."

The police arrived and spoke with her. Shortly thereafter, they entered a homeless shelter which was next door to her apartment building. There she identified the defendant, who "was crouched in the corner, you know, down."

The defendant took the stand and stated that the male with whom the victim had been seated earlier in the day was a drug dealer. Testifying that he was a former cocaine addict, he admitted saying to the victim that he had a "piece," but explained that he was referring to a piece of cocaine. He also admitted having a knife in his possession, explaining that he had gone to the Salvation Army to get some food, "when they told me I had to leave. I must have — you know, at that point I had like a serrated knife, cause I grab a knife and fork and tried to get me something to eat . . . ." He denied the incident, although he did say that when the couple happened by, the victim was hugging him.

On cross-examination, to counter the defendant's assertion that the victim's male friend was a drug dealer, the prosecutor asked, "Mr. Daley, you're the crack dealer, aren't you, you're the one that's the crack dealer, not the person that [the victim] was with?" When the defendant denied it, he was somewhat inartfully impeached with his conviction for distributing crack cocaine.[2] He explained, "I was dealing crack [cocaine] so I could smoke it."

This portion of the transcript, on which the majority places much concern, consists of barely three quarters of a page out of nineteen pages of cross-examination. The judge at length and forcefully limited the scope of this testimony in her instructions, which juries are presumed to follow. See *Commonwealth* v. *Rosa*, 422 Mass. 18, 29 (1996), citing *Commonwealth* v. *Albert*, 391 Mass. 853, 859 (1984).

Just before the conclusion of her cross-examination, the prosecutor sought to question the defendant regarding to what he had testified on direct, namely, that he was currently on probation. When she attempted to establish that he had an interest in the outcome of this case as it would undoubtedly affect his probationary status, the judge, out of an abundance of caution, disallowed this line of questioning. What the prosecutor sought to accomplish was appropriate. See *Commonwealth* v. *Ramos*, 31 Mass. App. Ct. 362, 368 (1991) (an interest in the outcome of the case is a criterion for assessing credibility). That the trial judge, in her discretion, disallowed it is indicative of the eminently fair manner in which she conducted the trial.

*The closing argument.* While certain aspects of the prosecutor's closing were improper, they were more than adequately addressed by the judge in her final instructions. Indeed, at the conclusion of the prosecutor's argument, the judge immediately, without request from defense counsel, forcefully and at length instructed the jury:

> "Ladies and gentlemen of the Jury, there is one thing I want to correct about [the prosecutor's] argument. She said that you may consider the defendant's character, and

---

[2]The defense attorney, on direct examination, had elicited that the defendant had been convicted of the crime and was on probation.

that was completely inappropriate argument. She then [alluded] to a prior conviction. Let me tell you the reason that I admitted that prior conviction. It was admitted for one purpose, and one purpose only. It was admitted for the purpose of helping you decide whether or not to believe the defendant's testimony, and how much weight, if any, to give it. You must not draw any inference of guilt against the defendant because of that prior conviction. The fact that the defendant was once found guilty of another crime does not mean that he is guilty of this charge, and you must not consider the prior conviction to be any indication of guilt on this charge.

"You may consider his prior conviction solely to help you determine whether or not he is a truthful witness. His character is not at issue here, whether he was in the past was a crack dealer. He's not charged with dealing crack in this case. The sole question for you to decide is whether or not the Commonwealth has sustained its burden of proof with regard to the crime which he is charged with, and certainly you may assess his credibility. In that connection, you may consider that prior conviction."

The instruction was more than adequate to dispel the taint of impropriety.

The majority speculates that the judge's failure to address specifically whether the knife was stolen somehow "may have appeared to endorse the rest of the prosecutor's argument." *Ante* at 94. One might equally speculate that the jury would view the prosecutor in a somewhat harsh light given the judge's condemnation of her remarks within seconds of her sitting down. Regardless, it is improper for this court to speculate about what the jury may or may not have thought.

The judge told the jurors in the clearest terms on numerous occasions that closing arguments are not evidence.[3] The jury

---

[3]The judge instructed the jury on this point prior to trial, prior to closing, and during her final instructions. While not taken into account here, it should be noted that the video tape shown to potential jurors upon their arrival in court for jury duty also includes this admonition, as does The Trial Juror's Handbook, which states, "The opening statements and closing arguments are not evidence." The Trial Juror's Handbook, Office of Jury Commissioner for the Commonwealth H-6 (1998).

were given thorough and clear instructions on a relatively simple case about the roles of the parties, whose memory controls, the burden of proof, the presumption of innocence, reasonable doubt and so forth. Demonstrating the close attention paid the case, the jury, during their deliberation, returned with thoughtful questions.

What it comes down to is simple: were the jury capable of fairly and impartially listening to the evidence, applying the thorough and proper instructions of the judge throughout the trial, and rendering a fair, just and correct verdict? Given the facts of this case, they were.[4] This being the case, I respectfully dissent.

---

[4]Presumably, had the Commonwealth met its discovery obligations, the consciousness of guilt evidence would have been admitted by the judge. When discussing the evidence, the prosecutor did tell the judge she was "not going to make an argument in the sense, I might ask the jury to draw on their common life experiences, but I'm not going to make a specific argument that this is an indication of his guilt to the jury." In her closing, she noted that the defendant, *as was testified to*, was crouched down by a soda machine. When she asked why this was so if the two had merely hugged, as the defendant had testified, the judge interrupted and admonished her in front of the jury ("you said you were not going to argue this. So, you'd better move on").