## COMMONWEALTH vs. CHRISTOPHER DALEY.

Middlesex. February 4, 2003. - June 16, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Indecent Assault and Battery. Evidence,* Prior misconduct, Credibility of witness, Prior conviction, Motive, Impeachment of credibility, Relevancy and materiality. *Practice, Criminal,* Conduct of prosecutor, Argument by prosecutor, Instructions to jury.

At the trial of a complaint charging indecent assault and battery, there was no prejudicial error requiring reversal in the prosecutor's presentation of the defendant "as a 'crack' cocaine-dealing, drug- and alcohol-abusing thief" during the trial, and then, in closing, inviting "the jury to consider the defendant's character," and disregarding "the judge's explicit order to refrain from argument about the defendant's supposed guilty conscience," where the defendant, not the prosecutor, affirmatively introduced the evidence on these subjects, and where, to the extent there was prosecutorial misconduct during closing argument, the judge took adequate steps, including a pointed and strong curative instruction, to ensure that the trial was fair. [562-570]

COMPLAINT received and sworn to in the Cambridge Division of the District Court Department on October 13, 1998.

The case was tried before *Janet L. Sanders,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Kevin J. Curtin,* Assistant District Attorney (*Allison O'Neil,* Assistant District Attorney, with him) for the Commonwealth.

*Jennifer H. O'Brien* for the defendant.

CORDY, J. Christopher Daley was convicted of indecent assault and battery by a jury sitting in the Cambridge Division of the District Court Department. The only witnesses at trial were the victim and the defendant. Their respective accounts of what occurred between them differed markedly, and the outcome clearly depended on the jury's assessment of the credibility of their testimony. A divided panel of the Appeals Court reversed the conviction, *Commonwealth* v. *Daley,* 55 Mass. App. Ct. 88,

94 (2002), on the ground of prosecutorial misconduct. It concluded that the prosecutor had presented the defendant "as a 'crack' cocaine-dealing, drug- and alcohol-abusing thief" during the trial, and had then, in her closing, both invited "the jury to consider the defendant's character," and disregarded "the judge's explicit order to refrain from argument about the defendant's supposed guilty conscience." *Id.* at 89. For these reasons, and in the absence of what it deemed to be adequate curative instructions, the court ruled there had been prejudicial error requiring reversal. *Id.* at 94. The case is before us on the Commonwealth's application for further appellate review.

We affirm the conviction on the basis of our conclusion that the defendant, not the prosecutor, affirmatively introduced the evidence on the very subjects about which he now complains, and to the extent there was prosecutorial misconduct during closing argument, the judge took adequate steps, including a pointed and strong curative instruction, to ensure that the trial was fair.

*The Commonwealth's Case.*

The victim, who stood four feet, eleven inches tall, testified that on the day of the incident she came into contact with the defendant, whom she had never seen before, on three separate occasions. In the late morning, while she was sitting on a park bench with a friend enjoying the October weather, the defendant approached and asked her for a cigarette. After she gave him one, he remained in the area. A few hours later, while she walked her dog, the defendant approached her again and engaged in some small talk. While the victim testified that she thought the defendant to be "a little strange," and did not wish to engage him in conversation, being cordial, she did so for a few minutes. Finally, at 7 P.M., when she left her home to walk to a restaurant to pick up some take-out food for her daughter, the defendant came up to her and grabbed her face so tightly that "I had cuts inside my mouth from my teeth." He then shoved her toward a bench and "was trying to stick his tongue in my mouth." As he did so, the victim struggled and he told her that he had a "piece," which she took to mean "a gun or a weapon." She began kicking her legs furiously. A couple happened by and called to her to see if she was "all right," she

responded that she was not, and the defendant fled. She thanked the couple, ran to her apartment, and telephoned the police. She testified that she was traumatized by, and terrified during, the assault.

After the police arrived, they took her to a homeless shelter located in the building next door to her apartment building. There she identified the defendant who "was crouched in the corner, you know, down" by a Coca-Cola machine. He was arrested and found to have a serrated knife in his possession.

This was the Commonwealth's case-in-chief. There was no evidence introduced about the defendant's drug dealing, drug use, drinking, or anything else of a derogatory nature except, of course, that he had committed this frightening assault.

*The Defense.*

The defendant took the stand in his own defense. He did not deny that he had approached the victim multiple times on the day in question, that there had been some sort of physical contact between them, that a couple had happened by and asked if the victim was "all right," that she had responded, "No. I'm not," and that he then left the scene. He contended, however, that the victim (whom he had not previously known) had given him a "hug" after he told her that it was his birthday. In the course of telling his story, the defendant testified that he was unemployed, had been panhandling outside a liquor store, received his meals at the Salvation Army (where he must have "grab[bed]" the serrated knife while trying to get something to eat), was on probation for selling cocaine, and was using crack cocaine and drinking liquor during the day of the incident to celebrate his birthday. He testified that at the time of the incident he was "buzzed," and that although he told the victim that he had "a piece" on him, he meant a piece of crack cocaine that he was offering to share with her. He believed she would be interested in the cocaine, because the person he had seen her with in the park earlier that day, he claimed, was someone he knew from his own experience to be a "crack dealer."

At the conclusion of the defendant's direct examination, the prosecutor, not surprisingly, cross-examined him on some of these subjects. She began by countering the defendant's assertion that he believed the victim would be interested in crack

cocaine because the victim's friend was a drug dealer, by asking him whether he was "the crack dealer" in this story and not the person who had been sitting with the victim in the park. When he equivocated, she pointedly asked him whether in fact he had been the one convicted for selling cocaine, something he had already testified to on direct examination. The prosecutor then got the defendant to admit that he had begun drinking alcohol and smoking crack cocaine around 1:30 P.M. on the day of the assault, and was "heavily intoxicated" at the time he claimed it was the victim who hugged him. She also proceeded to cross-examine him on why a couple might have approached them and asked if the victim was "all right," why the victim would have responded, "no," and why he would have fled if this was a hug she had initiated. Finally, the prosecutor questioned the defendant about an additional motive to lie about what happened and avoid a conviction because he was on probation.

*Closing Argument.*

In her closing, defense counsel argued that the defendant's testimony was worthy of belief because he took the stand when he did not have to and "[laid] his flaws out here," "laid it all out for you, clear, straight." She went on to argue that, because the defendant was willing to disclose all these bad things about himself, things that otherwise would never have come before them, "[t]hat says something about him; he's telling the truth."

The prosecutor responded to this argument about how the jury should assess the defendant's credibility in the following words:

> "Now, ladies and gentlemen, this [is a] case which comes down to credibility, credibility of the witnesses. And I would suggest to you that you make credibility assessments in your daily lives every day, every single day. For instance, you might bring your car into the shop. Your mechanic will tell you, you need a brand new transmission. You make an assessment, you make an assessment about his credibility. And sometimes it's not what he said, but how he said it. You make determinations about someone's credibility.
>
> "I'm asking you to draw on your life experiences, draw

on your own every day experiences in this case, and make determinations about credibility here today.

"Now I want you to take in consideration of [the] defendant's character. He's a crack dealer. He was dealing crack cocaine in 1998. That was the year of this incident, 1998. He was convicted of dealing crack cocaine. Now [defense counsel] says that happened a couple of years ago, no, 1998 he was convicted of dealing crack cocaine. Take that into consideration when you're assessing his testimony on the stand. He was drinking. He told you that. He did crack that day. Take that into consideration. He also stole a knife that day. So, he admitted to you on the stand that he stole a knife. He's a thief now, too.

"When you're taking in the fact that he did crack and he drank, take into consideration that the effects of his ability to perceive the events of that night. Now, he admitted to you that he saw her around 10, 10:30, when she was smoking a cigarette. . . . He was already drunk. It [a]f-fected what he heard from her. It [a]ffects his ability to perceive what she's saying to him. He took it to mean something it wasn't . . . ."

Later in her closing, the prosecutor made reference to testimony that the defendant was "[c]rouched down at the Coke machine" at the time he was identified, and asked why he would have been crouched down "[i]f this was a hug . . . ." The judge interrupted the prosecutor's argument and admonished her for making this argument, which the judge believed the prosecutor had agreed not to make.

*Discussion.*

Evidence of a person's bad character is generally not admissible for the purpose of proving that he acted in conformity with it. *Commonwealth* v. *Baker*, 368 Mass. 58, 86 (1975), quoting Fed. R. Evid. 404 (b).[1] Specific acts of misbehavior may of course be relevant to an issue legitimately in the case (e.g., state of mind, intent, knowledge, modus operandi), but

---

[1] The rationale for this rule is not that evidence indicative of bad character is irrelevant, but that "particularly in the setting of the jury trial, the dangers of prejudice, confusion and time-consumption outweigh the probative value." McCormick, Evidence § 190, at 659 (5th ed. 1999).

evidence of such acts cannot be used for the purpose of establishing the defendant's bad character or propensity to commit the crime charged. G. L. c. 233, § 21. See *Commonwealth* v. *Adams*, 434 Mass. 805, 820 (2001); *Commonwealth* v. *Turner*, 371 Mass. 803, 809-810 (1977). Consequently, it is improper for a prosecutor to offer evidence of bad character for the purpose of proving the Commonwealth's case, or to argue that a jury should consider the defendant's bad character as evidence that he committed the crime on which they will be deliberating. *Commonwealth* v. *Rivera*, 425 Mass. 633, 646 (1997), and cases cited.

The credibility of a witness, on the other hand, may be impeached by attacking his or her character, at least as it pertains to truthfulness. P.J. Liacos, M.S. Brodin, & M. Avery, Massachusetts Evidence § 6.10.1, at 309 (7th ed. 1999). Such impeachment can properly come only in the form of evidence of a witness's general reputation for truth and veracity, or by evidence of a witness's prior criminal convictions. *Commonwealth* v. *Roberts*, 378 Mass. 116, 129 (1979), *S.C.*, 423 Mass. 17 (1996).[2] With respect to the latter, the jury are permitted "to infer a readiness to lie from the witness's prior involvement in criminal activity." P.J. Liacos, M.S. Brodin, & M. Avery, *supra* at § 6.10.2, at 314. See *Commonwealth* v. *Cordeiro*, 401 Mass. 843, 855 (1988), quoting *Commonwealth* v. *Fano*, 400 Mass. 296, 302-303 (1987) ("defendant's earlier disregard for the law may suggest to the fact finder similar disregard for the courtroom oath"). The use of prior convictions for impeachment purposes must be done strictly in accordance with G. L. c. 233, § 21, and, of course, is generally done during cross-examination. A witness may, however, testify about his prior convictions for criminal conduct in direct examination in order to blunt the anticipated use of such evidence on cross-examination. *Commonwealth* v. *Blodgett*, 377 Mass. 494, 502 (1979). *Commonwealth* v. *Cadwell*, 374 Mass. 308, 312 (1978). If he does so, however, opposing counsel is also free to examine him further on the subject.

---

[2] Rule 608 (b) of the Proposed Massachusetts Rules of Evidence would permit the impeachment of a witness's credibility through cross-examination regarding prior bad acts even if they have not led to criminal convictions. We have not yet adopted this rule.

In addition to impeachment by evidence of an untruthful character, a witness may also be impeached by evidence challenging his testimonial faculties (e.g., ability to perceive the events or remember them accurately), see *Morea* v. *Cosco, Inc.,* 422 Mass. 601, 604-605 (1996); *Commonwealth* v. *Carrion,* 407 Mass. 263, 273-274 (1990), and by evidence of a motive to prevaricate, even though such evidence reveals an otherwise inadmissible fact, such as the witness's criminal activity. *Commonwealth* v. *Roberts,* 423 Mass. 17, 20-21 (1996). *Commonwealth* v. *Aguiar,* 400 Mass. 508, 513 (1987). This case involves impeachment of the defendant's credibility by each of these means.

If a prosecutor misuses impeachment evidence, either in the examination of a witness or in closing argument, we have long recognized that instructions from the trial judge may mitigate any prejudice to the defendant. *Commonwealth* v. *Kozec,* 399 Mass. 514, 518 (1987) ("impact of an improper final argument has been mitigated by the judge's forceful instructions to the jury that the argument was inappropriate and should be disregarded"). *Commonwealth* v. *Roberts,* 378 Mass. 116, 127-128 (1979) (prosecutor's misuse of prior convictions of defendant during cross-examination adequately cured by judge's instruction).

We turn now to the claim of prosecutorial misconduct raised in this case. The evidence offered by the Commonwealth in its case-in-chief presents no controversy, and the questioning undertaken on cross-examination of the defendant was well within proper bounds. Questioning directed at impeaching the defendant's credibility by eliciting evidence of his drinking and drug use during the hours preceding the assault was perfectly proper. *Commonwealth* v. *Carrion, supra* at 273-274, and cases cited (witness's use of drugs and alcohol at time of events was proper subject of cross-examination). Similarly, questioning regarding the defendant's probationary status was properly directed at eliciting an additional motive for him to misrepresent what had occurred. *Davis* v. *Alaska,* 415 U.S. 308, 316-318 (1974). With respect to the prosecutor's limited questioning of the defendant regarding his prior conviction of drug dealing, that was a subject opened up and made relevant by the defendant

during his direct testimony, and it was received in evidence without limitation. It was therefore fair game for further examination. See *Commonwealth* v. *Baldwin*, 385 Mass. 165, 179 (1982) (once defendant introduces subject, he may be cross-examined on it even if questioning does not conform to G. L. c. 233, § 21). Indeed, all of these subjects were introduced in the case by the defendant as part of his own trial strategy. We perceive neither error nor abuse by the prosecutor in her conduct of the case prior to closing argument.

With respect to her closing argument, if the prosecutor had argued that in assessing the credibility of the defendant the jury should consider (1) his character for untruthfulness as evidenced by his prior conviction; (2) his motive to lie based on his probationary status at the time of trial; and (3) his inability to perceive or recollect his conduct in light of his use of crack cocaine and alcohol throughout the day of the assault, her argument would have been well within proper legal bounds. Unfortunately, it was not. The argument was that the defendant's "character" as a dealer in crack cocaine and as a "thief" should be used by the jury in assessing his credibility. This was error.[3] The argument also increased the risk, always present when the

---

[3]It appears that the prosecutor may have explained to the judge, at the end of her argument, that her use of the word "character" in the context of what the jury should consider in assessing a witness's credibility, came directly from the Instruction 2.07 of the Model Jury Instructions for Use in the District Court (1995). That instruction (which was used by the judge in her charge) states:

"You may consider a witness's character, his appearance and demeanor on the witness stand, his frankness or lack of frankness in testifying, whether his testimony is reasonable or unreasonable, probable or improbable. You may take into account how good an opportunity he had to observe the facts about which he testifies, the degree of intelligence he shows, whether his memory seems accurate. You may also consider his motive for testifying, whether he displays any bias in testifying, and whether or not he has any interest in the outcome of the case."

The use of the word "character" in this instruction, not limited to character for truthfulness, is unfortunate, and its pedigree is far from clear. It apparently derives from language in *Commonwealth* v. *Coleman*, 390 Mass. 797, 802 (1984), but finds no specific support, or even mention, in other cases. Regardless of the merit of the argument that there is a difference between a jury's assessing the credibility of a defendant's testimony based on evidence of his

jury learn of a defendant's prior conviction, that the jury might improperly consider that same evidence of character in deciding the defendant's guilt. See *Commonwealth* v. *DiMarzo*, 364 Mass. 669, 679-680 (1974) (Hennessey, J., concurring) ("common sense and experience have led trial judges and trial lawyers to conclude that jurors do in fact regard the prior convictions of the defendant in many cases as proof of guilt"). *Commonwealth* v. *Childs*, 23 Mass. App. Ct. 33, 38 (1986), *S.C.*, 400 Mass. 1006 (1987), and 413 Mass. 252 (1992) (impeachment of defendant's credibility by prior convictions always subject to misconstruction by jury, who may regard impeachment as substantial evidence of guilt).

The judge astutely recognized the risk of prejudice in the prosecutor's argument, particularly with respect to the potential misuse of the defendant's prior conviction of selling cocaine. She responded, sua sponte, by instructing the jury, immediately at the close of the prosecutor's closing, that it was "completely inappropriate" for the prosecutor to say that they could consider the defendant's character as a convicted drug dealer. The judge went on to tell the jury the following:

> "You may consider his prior conviction solely to help you determine whether or not he is a truthful witness. His character is not at issue here, whether he was in the past a crack dealer. He's not charged with dealing crack in this case. The sole question for you to decide is whether or not the Commonwealth has sustained its burden of proof with regard to the crime which he is charged with, and certainly you may assess his credibility. In that connection, you may consider that prior conviction."

This instruction was correct, pointed, and adequate to obviate the risk of harm created by the prosecutor's reference to the defendant's character as a drug dealer in her closing argument. *Commonwealth* v. *Roberts*, 378 Mass. 116, 127 (1979).

The judge gave no specific curative instruction with respect

---

character for truthfulness (which is permissible), and a jury's use of that same evidence in determining the guilt or innocence of a defendant (which is not), the language in this instruction is inadequate to explain the subtleties or the difference, potentially confusing, and should be avoided.

to the added characterization of the defendant as a "thief."[4] The issue we must decide is whether this additional reference to character that adjoined the error corrected in the judge's instruction, constituted prejudicial error.[5,6]

"Once a properly raised objection to a prosecutor's argument is found to be valid, the entire record . . . becomes relevant in determining whether the error was prejudicial to the point of requiring a reversal of the conviction." *Commonwealth* v. *Kozec*, 399 Mass. 514, 523 (1987). After a review of the record in this case, including the care with which the judge empanelled the jury,[7] the significance of the error in the context of the evidence and the issues presented to the jury, the judge's instructions, and the inquiries from the jury during deliberations, we conclude that it was not.

Whether the defendant "stole" the knife was completely ir-

---

[4]We reject the defendant's claim that the prosecutor committed misconduct by misstating the evidence when she argued that the defendant "stole" the knife. There was evidence from the defendant that he took the knife from the Salvation Army, and evidence from the victim from which the jury could have inferred that he was armed with it at the time of the assault. This is an adequate basis for the prosecutor's argument.

[5]We cannot ascertain the extent of defense counsel's objection to the prosecutor's argument on this point because the transcript of the sidebar conference at which the objection was made reflects that it was somewhat "inaudible." Counsel clearly objected to the prosecutor's characterization of the defendant's testimony as admitting that he "stole" the knife, and we proceed on the assumption that that objection also encompassed the prosecutor's argument that the jury should consider the defendant's character as a "thief" in their assessment of his credibility. As preserved error, we review it to determine whether it was prejudicial.

[6]We do not agree with the Appeals Court that the judge's focus on the drug distribution conviction in her corrective instruction could have been construed by the jury as an endorsement of the prosecutor's characterization of the defendant as a "thief." *Commonwealth* v. *Daley*, 55 Mass. App. Ct. 88, 94 (2002). The role of drugs in the case became pronounced when the defendant took the stand, and the judge correctly perceived that the misuse of that evidence might be prejudicial and needed to be addressed specifically and pointedly. She also thoroughly and correctly instructed the jury regarding the role of closing argument, and what they should and should not consider in their deliberations. We do not assume that these instructions were ignored or not given equal weight with the instruction about the prior conviction. Taken together, they were adequate to ensure a fair trial.

[7]The judge conducted an individual voir dire of the jurors specifically with regard to their ability to be fair and impartial in deciding the case and in their assessment of the credibility of witnesses likely to testify.

relevant to the issues in the case, and the jury could not have concluded otherwise. The jury heard the undisputed evidence that the defendant had the knife when he was arrested, and that he took it from the Salvation Army at some point when he ate there. In the context of the defense, which emphasized that at the time of the alleged assault, the defendant had many "flaws" including being on probation for selling drugs, using crack cocaine (while on probation), drinking, and panhandling for a living, whether he was also a "thief" because he did not return a dinner knife, was innocuous. In addition, the judge clearly and forcefully instructed the jury to consider only the crime charged, and no other, on the question of the defendant's guilt or innocence, and underscored that the defendant's character was not at issue. Lastly, although the trial was short, the jury deliberated over two days, asking four separate questions of the judge, including questions about the evidence, whether they could review a police report that had been mentioned but was not in evidence, whether they could review a transcript of a portion of the defendant's testimony, and about the judge's instruction regarding the elements of indecent assault and battery. These questions suggest that the jury engaged in a careful and thorough examination of the evidence, focused, as the judge directed, on the defendant's conduct on the day in question, and not on his character. In these circumstances, we conclude that the prosecutor's error could not possibly have made a difference in the jury's conclusion. *Commonwealth* v. *Kater*, 432 Mass. 404, 422-423 (2000).

The final issue raised regarding the prosecutor's closing involved her argument about the defendant's postassault conduct. The victim testified that when she identified the defendant, he was "crouching" down near a Coca-Cola machine. Prior to closing arguments, defense counsel asked the judge to bar the prosecution from arguing that any of the defendant's actions evinced consciousness of guilt, because, in response to her discovery request, the Commonwealth had stated that it had no evidence of consciousness of guilt. The judge asked if the prosecutor was going to argue it, to which she responded:

"Your Honor, the Commonwealth is not asking for a

consciousness of guilt instruction. I'm certainly not going to make an argument in the sense, I might ask the jury to draw on their common life experiences, but I'm not going to make a specific argument that this is an indication of his guilt to the jury."

In her closing, the prosecutor began to argue that the jury, using their life experience, could interpret the defendant's crouching as inconsistent with his claim that the contact between himself and the victim was a consensual hug. The judge interrupted at once, and said: "[W]e talked about this particular argument, and you said that you were not going to argue this. So, you'd better move on."

The prosecutor moved on. No specific argument was ever made that the "crouching" demonstrated the defendant was conscious of his guilt and no specific argument was ever made that such feelings on his part tended to show his actual guilt. See *Commonwealth* v. *Stewart*, 398 Mass. 535, 547-549 (1986); *Commonwealth* v. *Toney*, 385 Mass. 575, 584-585 (1982).

The defendant made no objection and requested no instruction from the judge concerning the prosecutor's comments, which are reviewed only to ensure that there was no substantial risk of a miscarriage of justice. *Commonwealth* v. *Kozec, supra* at 517. There was no such risk. The prosecutor touched only tangentially on the inference of guilt and the jury, in any event, had heard the evidence of the defendant's "crouching," first from the victim and then from the defendant himself, see *Commonwealth* v. *Cohen*, 412 Mass. 375, 392-393 (1992), and were free to make whatever use of it that they thought it merited.[8]

*Conclusion.*

The portrayal of the defendant as a drug and alcohol abuser,

---

[8]In light of our holding affirming the defendant's conviction, we deal briefly with two additional issues not addressed by the Appeals Court. First, the question posed by the couple who happened by at the time of the assault, "Are you all right?," was not inadmissible hearsay because it was relevant and admissible for the nonhearsay purpose of explaining why the assault ended and the defendant fled. Second, defense counsel was not ineffective. None of the alleged omissions of counsel constitutes "serious incompetency, inefficiency, or inattention of counsel . . . falling measurably below that which might be expected from an ordinary fallible lawyer," and the defendant was not deprived of an otherwise available, substantial ground of defense. *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

on probation for selling cocaine, was a self-portrait drawn for the purpose of framing a viable defense. Any missteps made by the prosecutor were admonished and adequately mitigated by a prudent and watchful judge who ensured that the defendant received a fair trial.

*Judgment affirmed.*