NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-30

COMMONWEALTH

vs.

JEFFREY HANSON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial, the defendant was convicted of two counts of aggravated rape of a child under the age of sixteen,[1] and one count of incest.  On appeal, he claims the first complaint witness's testimony about the investigative process was irrelevant and prejudicial, the evidence of the defendant's past drug use was improper character and bad act evidence, and the prosecutor's closing argument improperly appealed to the jury's sympathy and vouched for the victim's and a witness's credibility.  We affirm.

---

[1] The aggravating factor was the more than five-year difference in the ages of the defendant and victim, who was under twelve years old.  See G. L. c. 265, § 23A (a).

1.  First complaint testimony.  At the time of the offenses, the victim was five years old.  The victim's mother was the first complaint witness.  For the first time on appeal, the defendant claims that the mother's testimony regarding what she did in the aftermath of the victim's disclosure violated the first complaint rule.  In particular, the defendant takes issue with the mother's testimony that she:  (1) contacted the victim's pediatrician; (2) met with a social worker who assisted her with reporting the matter to the Department of Children and Families; and (3) reported the assaults to the police.  None of these claims were preserved by an objection at trial, so we review to determine whether this evidence created a substantial risk of a miscarriage of justice.  See Commonwealth v. Freeman, 352 Mass. 556, 563-564 (1967).

In Commonwealth v. King, 445 Mass. 217, 246-247 (2005), cert. denied, 546 U.S. 1216 (2006), the Supreme Judicial Court announced the first complaint rule, and explained its purpose as follows:

> "[t]he goal of this new first complaint doctrine is to give the jury as complete a picture as possible of how the accusation of sexual assault first arose.  That complete picture will allow them to make a fairer and more accurate assessment of the validity of that accusation, based on specific information about the people involved rather than on outdated stereotypes and generalities."

Indeed, "a first complaint witness may testify to the circumstances surrounding the initial complaint." Id. at 246. Moreover, "[f]irst complaint testimony, including the details and circumstances of the complaint, will be considered presumptively relevant to a [victim's] credibility in most sexual assault cases where the fact of the assault or the issue of consent is contested." Id. at 247.

Here, the mother's testimony regarding the steps she took following the victim's disclosure did not violate the first complaint rule because it was relevant to the circumstances of the complaint, and it tended to negate the defense theory of fabrication.[2] The mother's testimony about her reactions and the steps she took were relevant to whether she had influenced the victim, or manufactured the allegations. See Commonwealth v. McCoy, 456 Mass. 838, 845 (2010), quoting King, 445 Mass. at 246 (first complaint witness may testify to "other relevant conditions that might help a jury assess the veracity of the [victim's] allegations or assess the specific defense theories as to why the [victim] is making a false allegation").

---

[2] The defense maintained that the defendant never sexually assaulted the victim, and that the allegations were entirely fabricated by the victim's mother, who the defense claimed "hated" the defendant.

3

To the extent this evidence touched on matters that preceded an investigation, it was not an improper introduction of how the Commonwealth brought its resources to bear on the incident, Commonwealth v. Stuckich, 450 Mass. 449, 457 (2008). Rather, it was a proper response to the theory of defense, see Commonwealth v. Espinal, 482 Mass. 190, 202 (2019); Commonwealth v. Santos, 465 Mass. 689, 700-701 (2013), particularly in this case with a child victim. See King, 445 Mass. at 239-240. The admission of the mother's first complaint testimony, including that now complained of, provided the jury with information that permitted them to make a fair assessment of the victim's credibility. See Commonwealth v. Hartnett, 72 Mass. App. Ct. 467, 472 (2008). There was no error, and thus, no risk that justice miscarried. See Commonwealth v. Randolph, 438 Mass. 290, 297 (2002).

2. The defendant's past drug use. The defendant also claims that the admission of evidence of his past drug use was improper character and bad act evidence which resulted in prejudicial error. We disagree.

Prior to trial, the defendant moved in limine to prohibit the Commonwealth's witnesses from testifying relative to, among other things, the defendant's past sale or use of drugs. At the hearing on the motion, the prosecutor agreed that he would not

4

introduce such evidence in his case-in-chief, but expressed concern that he not be subject to the same limitation if defense counsel opened the door to its admission. Ultimately, the judge ruled that if the defense opened the door, the prosecutor would be required to seek the judge's permission before pursuing the matter.

At trial, the prosecutor heeded the evidentiary limitation and did not introduce any evidence of the defendant's past drug use in his direct examination of the witnesses. The Commonwealth called the defendant's brother as a prosecution witness. He testified that after the defendant was arrested on the charges at issue here, the defendant asked him to meet; at the meeting, the defendant admitted to having abused the victim as she described. On cross-examination of the defendant's brother, defense counsel asked whether he had drifted apart from the defendant over the past couple of years, and he replied that he now only got together with the defendant "reluctantly" a few times a year. On redirect, the prosecutor asked why the two had drifted apart, and the brother responded, "Part of it is this issue, I think, . . . he has a drug problem, and I don't want that around my -- my family."[3] The defendant did not object.

---

[3] Although the prosecutor did not seek a sidebar conference before asking this question, it is not clear, on this record,

5

As an initial matter, the parties disagree on whether the motion in limine preserved the defendant's claim. We need not resolve that dispute because even if the claim is preserved, we review for an abuse of discretion. Commonwealth v. McCowen, 458 Mass. 461, 478 (2010). "[E]vidence of prior bad acts 'is not admissible to show a defendant's bad character or propensity to commit the charged crime.'" Commonwealth v. Facella, 478 Mass. 393, 403 (2017), quoting Commonwealth v. Dwyer, 448 Mass. 122, 128 (2006). "[S]uch evidence is admissible when offered for another purpose . . ., so long as its probative value for that purpose is not outweighed by its prejudicial effect." Commonwealth v. Welch, 487 Mass. 425, 442-443 (2021), quoting Commonwealth v. Hall, 485 Mass. 145, 163 (2020).

Here, defense counsel opened the door by asking whether the brothers had drifted apart. On redirect, the prosecutor was entitled to seek an explanation of the matter. See Commonwealth v. Garcia, 470 Mass. 24, 36 (2014). In any event, the reference to the defendant's drug use was fleeting, was not solicited, and gave the jury an understanding of why the brothers were no longer close. This was particularly relevant because the defendant denied that he admitted his crimes to his brother, and

_____

that he believed the answer would refer to the defendant's drug use.

6

the brother's credibility was a live issue at trial.  See

Commonwealth v. Foster, 411 Mass. 762, 767-768 (1992).  See also

Commonwealth v. Rebello, 450 Mass. 118, 129 (2007) (defendant

not prejudiced by erroneously admitted but fleeting testimony

that he had sold heroin).  There was no abuse of discretion.

In the defendant's case, the topic of drug use reappeared

during the prosecutor's cross-examination of the defendant.  The

underlying purpose of the prosecutor's examination was to

impeach the defendant's testimony through his ability to

perceive.  In this vein, and without objection, the defendant

agreed that his past abuse of opiates did not improve his memory

of events or his ability to perceive them.  However, the

defendant denied using opiates after the victim was born, but

his heroin use increased after he lost custody of her.  He also

admitted to using cocaine, but only after the assaults had been

reported to the police.

The defendant claims the motion in limine preserved this

claim, but the defendant's testimony, of course, occurred in his

defense, and not as part of the agreed-to limitation on the

Commonwealth's case-in-chief.  In that posture, this claim of

error was not the subject of the motion in limine, and thus, it

is not preserved.  See Commonwealth v. Grady, 474 Mass. 715, 719

(2016).  Accordingly, to the extent that we discern error in the

7

admission of this evidence, we review to determine whether the prosecutor's cross-examination created a substantial risk of a miscarriage of justice.  See Freeman, 352 Mass. at 563-564.

Here, the prosecutor was not attempting to elicit bad act or propensity evidence, but rather was endeavoring to establish that the defendant's drug use had a deleterious effect on his ability to perceive and remember the events about which he was testifying.  A witness may be impeached with matters that challenge his testimonial facilities even if that evidence reveals an otherwise inadmissible fact, like criminal activity not related to the charged crime.  See Commonwealth v. Daley, 439 Mass. 558, 564 (2003).  This may properly include a witness's use of narcotics.  Commonwealth v. Carrion, 407 Mass. 263, 273-274 (1990).  Here, the prosecutor was properly attempting to determine whether the defendant's drug use overlapped with the period during which the victim was sexually assaulted.  In the end, the defendant largely denied that his past drug use affected his faculties, and defense counsel declined the judge's offer for a curative instruction.  There was no error, and thus, no risk that justice miscarried. Randolph, 438 Mass. at 297.

3.  The prosecutor's closing argument.  Finally, the defendant claims for the first time on appeal that the

8

prosecutor's closing argument improperly vouched for the victim's and a witness's credibility, and impermissibly appealed to the jury's sympathy. Because the defendant did not object to the claims he now raises on appeal, we review to determine whether there was error, and if so, whether it created a substantial risk of a miscarriage of justice. "Errors of this magnitude are extraordinary events and relief is seldom granted." Randolph, 438 Mass. at 297.

> "A prosecutor can address, in a closing argument, a witness's demeanor, motive for testifying, and believability, provided that such remarks are based on the evidence, or fair inferences drawn from it, and are not based on the prosecutor's personal beliefs. . . . When credibility is an issue before the jury, 'it is certainly proper for counsel to argue from the evidence why a witness should be believed.'"

Commonwealth v. Freeman, 430 Mass. 111, 118-119 (1999), quoting Commonwealth v. Raymond, 424 Mass. 382, 391 (1997). Here, the prosecutor properly urged the jury to believe the victim and the witness, who was the defendant's brother. He stated that,

> "On cross-examination, [the victim] says this wasn't easy for her, and you can see why. She's a nine-year-old girl who took the stand and had to talk about some terrible things that happened to her. She told you in detail where this happened at the defendant's home. She told you in detail inside the home where it happened in the defendant's bedroom on the bed."

Relative to the defendant's brother, the prosecutor argued that,

"[i]t was clear from his demeanor on the stand that this was hard on him. He had to take the stand to testify against his own flesh and blood, his brother, and he was emotional. He got emotional talking about some of the good times in the family, some of the stories that he had having a younger brother being about [ten] years older than the defendant.

"That they were brothers. They were -- they loved each other. He told you about taking the defendant out when he got his license. He told you about being the best man at his wedding. Things that he had done to help the defendant through the years. This is (indiscernible) the defendant, and despite all of that, he got up there and told you in great detail about the conversation he had with the defendant, where the defendant admitted to the crime."

The prosecutor then recounted how the brother's testimony was a detailed account of his conversation with the defendant. He noted how the defendant struggled, and was emotional, in the course of the admission he made to his brother. The prosecutor then added,

"[t]his is a family member he cares about and still cares about, but despite that, he got up there and told you that the defendant admitted that he did what [the victim] said he did. Why would [the defendant's brother] make that up? He was the best man at the defendant's wedding. They had been brothers for [forty] years; why would he make that up?"

In short, we find no merit in the defendant's claim that in these selected portions of the closing argument, the prosecutor was urging the jury to believe the victim and the witness because they were able to overcome the difficulty of having to testify. Rather than vouching for their credibility or seeking their testimony to be credited for simply having the wherewithal

10

to testify, the prosecutor was arguing the witnesses were credible based on facts developed at trial, and highlighted their demeanor as a reason to credit their testimony. In fact, the prosecutor expressly told the jury that "[i]t was clear from his demeanor on the stand that this was hard on him." In other words, the prosecutor used the emotional nature of his testimony about his own brother to illustrate that he had no motive to lie. See Freeman, 430 Mass. at 118-119.

Similarly with respect to the victim, when the prosecutor argued that "it wasn't easy" for her to testify, in context, was an appropriate comment on her demeanor and the content of her testimony, rather than a suggestion that the victim "was credible because of her willingness to testify." Commonwealth v. Dirgo, 474 Mass. 1012, 1014 (2016). The argument was used as a backdrop to the reality of the difficult nature of the case and the victim's young age -- all matters that were grounded in evidence -- to argue why the victim was credible. Importantly, the prosecutor did so by stressing not the victim's age or the nature of the allegations, but by emphasizing how the victim testified in great detail. See Commonwealth v. Deloney, 59 Mass. App. Ct. 47, 52 (2003).

Furthermore, and contrary to the defendant's claim, the prosecutor's closing argument did not make an inappropriate

11

appeal to sympathy.  The prosecutor's use of the term "gut wrenching" to describe the victim's and the witness's testimony was not an appeal to sympathy as much as it was an overall characterization of the difficult subject matter of the case, i.e., rape and incest.  In fact, defense counsel also described the case in his opening statement and closing argument as "ugly" and "gut-wrenching."  Although the prosecutor's repeated references to the brother as the defendant's "flesh and blood" were unnecessary rhetorical flourishes, they were simply used to maintain that the brother had no motive to lie about what his own brother had admitted to him.

Finally, it was not an appeal to sympathy for the prosecutor to describe the victim's first complaint to her mother as "an emotional moment where [the victim], at age five, after bathing, decides to open up to her only real caretaker, her mother, an only child," or shortly thereafter, to state, "[i]t makes sense that [the victim] would open up to her mother. She's a five-year-old.  Her mother is the only real parent she (indiscernible) love.  Who else would she disclose this to?"

This portion of the argument merely addressed the reality of the victim's circumstances as it was developed in the evidence and responded to the defense of fabrication.  Indeed, because the defense had made the victim's and her mother's

12

credibility an issue on both cross-examination and in closing argument, "the prosecutor was entitled to respond within the limits of the evidence and to provide the jury with reasons for believing [them]."  Commonwealth v. Kapaia, 490 Mass. 787, 803 (2022).  As there was no error, there was no risk that justice miscarried.

Judgments affirmed.

By the Court (Vuono, Meade & Hand, JJ.[4]),

Clerk

Entered:  December 24, 2024.

---

[4] The panelists are listed in order of seniority.